# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **LYDIA McCOY** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-723-JWD-SDJ** |
| **SC TIGER MANOR, LLC, et al.** | |

## **ORDER**

Before the Court are five motions related to ongoing discovery in this matter, four filed by Plaintiff and one by Defendants: (1) a Motion for Protective Order (R. Doc. 58), filed by all Defendants on July 31, 2020; (2) a Motion to Strike General Objections and Non-Responsive Documents ("Motion to Strike") (R. Doc. 56), filed by Plaintiff on July 28, 2020; (3) a Motion to Compel Production of Documents ("Motion to Compel") (R. Doc. 57), also filed by Plaintiff on July 28, 2020; (4) a Motion for Leave to File a Reply and Exceed Page Limits and for Sanctions (R. Doc. 65), filed by Plaintiff on August 24, 2020; and (5) a Motion for Leave to Supplement Reply in Response to Defendants' Oppositions and Motion for Sanctions (R. Doc. 66), filed by Plaintiff on August 26, 2020. Plaintiff opposes Defendants' Motion for Protective Order, filing her opposition on August 17, 2020. (R. Doc. 59). Plaintiff's Motion to Strike and Motion to Compel are opposed by Defendants Equifax Information Services, LLC ("Equifax") (R. Docs. 60, 62), Experian Information Solutions, Inc. ("Experian") (R. Doc. 61), IQ Data Int., Inc. ("IQ Data") (R. Doc. 63), and SC Tiger Manor, LLC ("Tiger Manor") (R. Doc. 64), with all of these oppositions being filed on August 18, 2020. On September 14, 2020, Defendants also filed Responses in Opposition to Plaintiff's Motion for Sanctions (Experian, R. Doc. 69; Equifax, R. Doc. 70; Tiger Manor, R. Doc. 71; and IQ Data, R. Doc. 72).

2

## I. BACKGROUND

*Pro se* Plaintiff Lydia McCoy filed her Complaint (R. Doc. 1) against Defendants SC Tiger Manor, LLC, Equifax Information Services, LLC, Experian Information Solutions, Inc., and IQ Data Int., Inc. on October 16, 2019, in which she alleges Defendants violated the Fair Credit Reporting Act and the Fair Debt Collections Practices Act.[1] The dispute arises from an alleged debt Plaintiff incurred while a resident at Tiger Manor Apartments, which debt subsequently was reported to the "major credit bureaus."[2] Plaintiff disputes the debt.[3]

The parties currently are engaged in discovery. As set forth in the Scheduling Order, the fact discovery deadline in this litigation is November 2, 2020.[4] Plaintiff served discovery requests on Defendants in January and February 2020.[5] According to the parties, a Federal Rule of Civil Procedure 26(f) conference was held between Plaintiff and Defendants on February 12, 2020, after which they filed a Joint Status Report with this Court.[6] Plaintiff has served several discovery requests on all Defendants, and every Defendant has responded to some extent to Plaintiff's requests.[7]

Plaintiff conducted individual meet and confers with Defendants between June 15 and June 22, 2020.[8] Approximately a month later, on July 28, 2020, Plaintiff filed her Motion to Strike and Motion to Compel, here at issue.[9] Three days later, on July 31, 2020, Defendants responded by filing their Motion for Protective Order.[10] Oppositions to each of these motions have been filed, as set forth above.[11] Subsequently, on August 24, 2020, Plaintiff filed a Reply in support of her Motion to Strike

---

[1] R. Doc. 1, p. 1 ¶ 1.
[2] R. Doc. 1, pp. 3-5 ¶¶ 7-12.
[3] R. Doc. 1, p. 5 ¶ 13.
[4] R Doc. 48.
[5] R. Doc. 60, p. 2; R. Doc. 61, p. 3; R. Doc. 56-1, p. 5.
[6] R. Doc. 61, p. 3; R. Doc. 42; R. Doc. 58-3, p. 1.
[7] R. Doc. 60, p. 2; R. Doc. 61, p. 5; R. Doc. 63, pp. 1-2; R. Doc. 64, p. 2.
[8] R. Doc. 57-1, p. 2.
[9] R. Docs. 56 and 57.
[10] R. Doc. 58.
[11] Plaintiff: R. Doc. 59; Equifax: R. Docs. 60 and 62; Experian: R. Doc. 61; IQ Data: R. Doc. 63; SC Tiger Manor: R. Doc. 64.

and Motion to Compel which contained, *inter alia*, a motion for sanctions against Defendants.[12] She followed this Reply with a motion for leave to supplement it.[13] All of these pending discovery motions are discussed, in turn, below.

## II.   LAW AND ANALYSIS

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

### A.  Motion for Protective Order

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including…requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G). Rule 26(c)'s "good cause" requirement indicates that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *U.S. v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)). "Good cause exists when disclosure will result in a clearly defined and serious injury to the party seeking the protective order." *Blanchard & Co., Inc. v. Barrick Gold Corp.*, No. 02-3721, 2004 WL 737485, at *5 (E.D. La. Apr. 5, 2004) (citation omitted).

---

[12] R. Doc. 65.
[13] R. Doc. 66.

4

The parties seeking the protective order "must articulate the injury with specificity," and "[b]road allegations of harm, unsubstantiated by specific examples do not support a showing of good cause." *Id.*

In their Motion for Protective Order (R. Doc. 58), Defendants seek a protective order "so that [they] may produce any potentially responsive documents containing confidential, proprietary trade secrets with proper assurances that such documents will be used only in connection with this litigation and shall remain confidential."[14]  As explained in more detail:

> An adequate protective order governing the treatment of confidential documents is especially necessary where, as here, Defendants Experian and Equifax are often direct business competitors and misuse of proprietary data could seriously harm the business of either Defendant.  Likewise, IQ Data's account notes and contracts with its client-creditor contain personally identifiable information and material that IQ Data considers proprietary and a trade secret.  With particular respect to its contracts with its clients, the terms and conditions of those agreements are highly sensitive and their wide dissemination could result to [sic] irreparable harm to IQ Data in the marketplace.[15]

Specifically, Experian asserts that its computer system, which "maintains credit information on more than 200 million American consumers" and on which "Experian has spent tens of millions of dollars and countless hours of employee time developing, enhancing, and refining" gives it a "major advantage in the highly competitive credit reporting marketplace."[16]  Per Experian, "if a current or potential competitor of Experian gained access to information about Experian's computer system, Experian's competitive advantage would be destroyed."[17]  Further, the unintended release of information regarding its computer system could also threaten "the privacy of consumers on whom Experian reports information."[18]  Experian, therefore, uses "a number of external and internal safeguards" to protect "against disclosure of information about its system," including by "restrict[ing] access to sensitive

---

[14] R. Doc. 58, pp. 1-2.
[15] *Id.* at 5-6.
[16] *Id.* at 6.
[17] *Id.*
[18] *Id.* at 7.

5

documents—such as those potentially at issue here—by giving confidential status to any documents that contains secret information."[19]

Similarly, IQ Data's "account notes are proprietary trade secrets that IQ Data has spent substantial time and capital developing" that "reflect IQ Data's intake procedures, the various phases of its collection strategy and practices, and the inducements it offers debtors to resolve their debts."[20] "Dissemination of the account notes outside of this litigation would disadvantage IQ Data against its competitors by providing them with insight into IQ Data's finely-honed collection strategy and practices, which such competitors could then use to compete against IQ Data…to IQ Data's detriment."[21]

Defendant Experian asserts that certain of Plaintiff's Requests for Production "reasonably encompass documents that are likely to contain the types of internal codes, policies, and procedures that Experian works to protect."[22] For example, Experian alleges that Plaintiff's RFP no. 1, which requests all documents that "verif[y] and validate the debt that is being reported to Experian…," "would require Experian to produce internal Dispute/Response Logs, Disclosure Logs, and Transaction Logs, which all not only evidence Experian's debt validation and consumer dispute actions but which also contain proprietary codes and reflect internal systems that Experian seeks to protect from public or competitive disclosure."[23] Experian further posits that any future discovery requests likely also will seek documents "containing or relating to these systems, as these types of documents are common in consumer dispute cases."[24]

Plaintiff, in turn, opposes the imposition of any type of protective order, claiming that the documents she seeks are not confidential and noting repeatedly that despite her requests for lists of the

---

[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *Id.* at 8.
[23] *Id.* at 8.
[24] *Id.*

6

confidential documents that Defendants claim to have, no such lists from Defendants have been provided.[25] Plaintiff further claims that "[a]ll that defendants have provided in their contentions regarding the existence of good cause is utterly broad, conclusory allegations and no specific demonstrations of fact or concrete examples how clearly non-confidential requested materials will cause them significant harm, if disseminated."[26] Per Plaintiff, "blanket protective orders ha[ve] potential to abuse discovery that she has been already observing and that there is no way of telling how it might interfere with Plaintiff's preparation to trial."[27] Plaintiff thus claims that the good cause standard has not been met because Defendants have not yet disclosed "what documents they are withholding, if any, but will produce after the protective order is in place.[28]

Of note in making a determination as to whether a protective order is warranted here is that Defendants Experian, Equifax, and IQ Data all stated in the Joint Status Report, signed by Plaintiff and all Defendants, and filed February 20, 2020 (R. Doc. 42), that a protective order was anticipated.[29] Plaintiff made no objection to a potential protective order at the time.[30] Additionally, on May 11, 2020, Experian purportedly circulated a draft of the proposed protective order to Plaintiff.[31] Plaintiff, however, despite having an opportunity to review the draft and despite engaging in meet and confers with each Defendant between the time the draft was circulated and the time Defendants' Motion for Protective Order was filed, has not offered "any specific objections or proposed modifications to the protective order."[32]

---

[25] R. Doc. 59, pp. 1, 7.
[26] *Id.* at 3.
[27] *Id.* at 6.
[28] *Id.* at 7.
[29] R. Doc. 42, pp. 8-9.
[30] *Id.* In addition, per Experian, "During the pre-trial conference communications between the parties pursuant to FED. R. CIV. P. 26 in early February 2020, Defendants notified the [sic] Ms. McCoy that they anticipated that discovery would involve the production of their confidential information, thereby necessitating a protective order. Ms. McCoy did not object or otherwise raise any concern." R. Doc. 61, p. 3.
[31] R Doc. 58-2, p. 4.
[32] *Id.*

7

Having considered the parties' arguments and the record as a whole, the Court here finds good cause exists for entry of a protective order. Defendants have demonstrated that there is a risk of substantial harm if certain proprietary information is disclosed to either the public or close competitors.[33]

In granting this Motion for Protective Order, the Court is optimistic that no impediments remain to Defendants' adequate response to Plaintiff's discovery requests. The Court cautions Defendants that the Protective Order, and the document review and designation it requires, is not a reason for undue delay and that they are to be judicious in the designation of documents as confidential. Similarly, the Court cautions Plaintiff that she is now subject to the Protective Order and must abide by all of its requirements, including those related to maintaining confidentiality and procedures for filing documents that contain or refer to confidential information.

### B. Motion to Strike

In her Motion to Strike (R. Doc. 56), accompanied by a 64-page memorandum in support, Plaintiff seeks to strike all Defendants' "general objections, specific objections, and non-responsive answers and produced documents" from the record as, according to Plaintiff, they are "violative of the law and procedure, non-responsive, irrelevant, and do nothing more than flood the record."[34] However, in her motion, Plaintiff fails to state which statute is being violated, as both Rule 34 and Rule 36 of the Federal Rules of Civil Procedure allow a responding party to object to discovery requests.[35]

---

[33] *See, e.g., Blanchard*, *supra*, at *6 ("Between those two extremes [of a narrow protective order covering specific, identified information and an umbrella protective order] is a 'blanket' protective order that permits the parties to protect documents that they believe in good faith contain trade secrets and other confidential commercial information. Such protective orders are routinely agreed to by the parties and approved by the courts in commercial litigation, especially in cases between direct competitors. *'Blanket' protective orders are essential to the functioning of civil discovery*.") (emphasis in original) (quoting *Bayer AG & Miles, Inc. v. Barr Labs., Inc.* 162 F.R.D. 456, 465 (S.D.N.Y. 1995), overturned on other grounds).

[34] R. Doc. 56, p. 1.

[35] Further, none of the Defendants have stated that they withheld documents on the basis of any objection. **Experian:** "Accordingly, Experian substantially produced the relevant, non-confidential documents in its possession responsive to Ms. McCoy's requests, and did not withhold any non-confidential documents on the basis of its objections." R. Doc. 61, p. 5. **IQ Data:** "…such objections were for the purpose of clarification and no answers or documents were withheld on the basis of any objection other than the protection of proprietary information—which was only subject to the entry of a protective order—and privileged materials." R. Doc. 63, p. 3. **Equifax:** "Despite repeated demands, Plaintiff has not identified for Counsel the additional documents she seeks. Equifax has been and still remains unclear as to what additional

8

She also seeks to strike certain documents produced by certain Defendants that she claims impermissibly disclose some of her personal information.[36] However, none of these objections or documents which Plaintiff seeks to have stricken are part of the record. Thus, Plaintiff seeks relief the Court cannot grant. As such, the Court will deny this Motion.

### C. Motion to Compel

In her Motion to Compel (R. Doc. 57), Plaintiff seeks to compel responses and production of documents to discovery requests submitted to each Defendant in February 2020.[37] While it is clear from both Plaintiff and Defendants' pleadings that Defendants have provided some documents and responses to Plaintiff, the majority of Defendants claim a protective order is needed before they can more fully respond.[38] In light of this Court's imposition of the attached Protective Order, the Court, to allow Defendants the opportunity to adequately respond to Plaintiff's discovery requests, will deny this motion without prejudice. Thus, Plaintiff can reurge her motion if, only after allowing sufficient time for Defendants to produce their remaining documents, Defendants' discovery responses and/or document production are still inadequate.

### D. Motion for Leave to File Reply and Exceed Page Limit

In her Motion filed on August 24, 2020 (R. Doc. 65), Plaintiff seeks, in addition to the imposition of sanctions against Defendants, which is addressed in the following section, leave to file a

---

documents to produce. Equifax has responded to all of Plaintiff's discovery requests and produced over two hundred and twenty seven documents to Plaintiff." R. Doc. 62, pp. 2-3.

[36] R. Doc. 56-1, pp. 13, 31, 63-64.

[37] The Court notes that in a later pleading, Plaintiff claims that this Motion to Compel does not apply to IQ Data. *See* R. Doc. 59, p. 4 ("Plaintiff is not seeking to compel IQ Data who, after making empty promises and stalling for 4 months, finally, on July 6, 2020 produced some responsive documents."). However, this distinction is not made in the Motion to Compel, and as drafted appears to apply to all Defendants.

[38] **Experian:** "Further, Experian explained time and again to Ms. McCoy that the remainder of its relevant, responsive documents would be produced upon entry of a protective order." R. Doc. 61, p. 1. **Equifax:** "Counsel explained perhaps a protective order would need to be put in place prior to additional production if the list from Plaintiff included proprietary information as her discovery requests had." R. Doc. 60, p. 2. **IQ Data:** "Nevertheless, the fact remains that IQ Data has produced its entire collection file regarding the disputed debt underlying Plaintiff's claims against the Defendants herein in response to Plaintiff's discovery requests, withholding only the account notes pending the entry of a protective order." R. Doc. 63, p. 2.

reply memorandum in support of her Motion to Compel and Motion to Strike as well as leave to exceed the 25-page limit for her Memorandum in Support of her Motion to Strike.[39]

Plaintiff first seeks to file a Reply Memorandum in support of her Motion to Compel and Motion to Strike, addressed above. Although Plaintiff's Reply Memorandum exceeds the page limit for same set forth in this Court's Local Rules, this Court will allow Plaintiff's reply to be filed in light of this Court's rulings on her Motions to Compel and to Strike. *See* Local Civil Rule 7(g) of the Local Rules of the U.S. District Court for the Middle District of Louisiana ("Reply and surreply memoranda, if permitted, shall be **limited to ten pages**."). The Court, however, reminds Plaintiff that, while she is proceeding *pro se*, she still must comply with the rules of this Court. *See Christmas v. D.G. Foods, LLC*, No. 15-932, 2019 WL 6954278, at * 1 (S.D. Miss. Dec. 19, 2019) ("A *pro se* litigant must comply with statutory obligations and abide by the rules of this Court.") (citations and internal quotations omitted). In the future, pleadings that do not adhere to the page limits set forth in the Local Rules, or for which leave of Court to exceed those limits has not been granted, will not be allowed.

With regard to Plaintiff's motion for leave to exceed the page limit for her previously-filed Memorandum in Support of her Motion to Strike, Plaintiff again is reminded that to comply with Local Rule 7(g), leave of Court "must be obtained to file memoranda in excess of the [25-page] limit." Permission, therefore, should have been sought prior to the filing of Plaintiff's Motion to Strike, not almost a month after said motion was filed. However, in only this instance and in light of this Court's denial of Plaintiff's Motion to Strike, the Court will allow the Motion to remain as filed and grant Plaintiff's request to exceed the page limit.

### E. Motion for Sanctions

Plaintiff also has filed a Motion for Sanctions (R. Doc. 65) against Defendants. Per Plaintiff, "[p]ursuant to Civil Rule 37(a), Plaintiff requests that the Court authorizes sanctions for defendants'

---

[39] R. Doc. 65, pp. 2-3.

10

discovery resistance, employing various dilatory tactics, and refusing to turn over documents, necessary for the trial preparation."[40] Plaintiff seeks "reasonable attorney fees for the amount of work, dedicated to dealing with discovery resistance."[41]

Federal Rule of Civil Procedure 37(a)(5) allows for the imposition of expenses in certain instances, depending on whether a discovery motion is granted or denied. According to Rule 37(a)(5)(A)-(B):

> (A) If the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees….
>
> (B) If the motion is denied, the court may issue any protective order authorized under Rule 26(c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust.

Here, because Plaintiff's Motion to Compel is being denied, albeit without prejudice, the Court does not find that she is entitled to an award of expenses under Rule 37. The Court also, however, does not find that Defendants are entitled to such an award either. As explained above, the majority of Defendants have claimed that they will be able to adequately respond to Plaintiff's discovery requests once a protective order is in place. Defendants now have that opportunity. As such, given the current circumstances of this case, the Court finds that any such award at this point would be unjust.

However, the parties—and Plaintiff in particular—are cautioned that filing discovery motions with the Court should be a recourse of last resort. *See, e.g., Draper v. Bank of Am., N.A.*, No. 11-505, 2012 WL 12878606, at *2 (W.D. Tex. Mar. 8, 2012) (regarding discovery matters, "[n]either side should seek determinations from this Court, except as a last resort"). Thus, the Court may consider

---

[40] R. Doc. 65, p. 11.
[41] *Id.*

11

sanctions in the future if the parties are unable to cooperate and continue discovery in a productive, civil manner.

### F. Motion for Leave to Supplement Reply

Finally, Plaintiff has filed a Motion for Leave to Supplement Reply in Response to Defendants' Oppositions and Motion for Sanctions (R. Doc. 66), in which she seeks to add two additional exhibits to her Reply Memorandum and Motion for Sanctions. However, Plaintiff's Reply Memorandum already exceeds the page limit set forth in this Court's Local Rules for a reply memorandum, and leave of Court was not and has not been obtained to exceed that page limit. *See* Local Civil Rule 7(g), *supra*. As such, the Court will not allow Plaintiff to supplement her Reply.

## III.   CONCLUSION

Based on the foregoing,

**IT IS ORDERED** that the Motion for Protective Order filed by all Defendants (R. Doc. 58) is **GRANTED** and the attached Protective Order is entered into the record. The Court notes for Plaintiff and counsel that it has **changed** all references to "Stipulated Protective Order" in Exhibit A "Declaration of Compliance" to "Protective Order."[42]

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike General Objections and Non-Responsive Documents (R. Doc. 56) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Compel (R. Doc. 57) is **DENIED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to Supplement Reply in Response to Defendants' Oppositions and Motion for Sanctions (R. Doc. 65) is **GRANTED IN PART AND DENIED IN PART**. To the extent it seeks leave to file a reply and leave to exceed the page

---

[42] The Court also corrected a formatting error on page 5, Section 6(b)(iv) of the Protective Order.

limit for the Motion to Strike, Plaintiff's Motion is **GRANTED**. Plaintiff's Motion for Sanctions against Defendants is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to Supplement Reply in Response to Defendants' Oppositions and Motion for Sanctions (R. Doc. 66) is **DENIED**.

Finally, the Court admonishes Plaintiff that, although proceeding *pro se*, she still is to conduct herself with the professionalism expected of all people appearing in front of this Court. As such, she will refrain from any further derogatory comments or unnecessary disparagement of Defendants or defense counsel in all future pleadings.

Signed in Baton Rouge, Louisiana, on September 16, 2020.

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**