## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**LYDIA McCOY**                                      **CIVIL ACTION**

**VERSUS**
                                                      **NO. 19-723-JWD-SDJ**
**SC TIGER MANOR, LLC, et al.**

## <u>NOTICE</u>

      Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

      In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

      **ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

      Signed in Baton Rouge, Louisiana, on January 28, 2021.

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **LYDIA McCOY** | **CIVIL ACTION** |
| **VERSUS** | |
| **SC TIGER MANOR, LLC, et al.** | **NO. 19-723-JWD-SDJ** |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Before the Court are a Motion for Disqualification pursuant to 28 U.S.C. §§ 144 and 455 (R. Doc. 106), filed on November 30, 2020, and a Motion to Change Venue (R. Doc. 107), filed on December 1, 2020, both by *pro se* Plaintiff Lydia McCoy.  Defendant Equifax Information Services LLC ("Equifax") filed oppositions to both Motions (R. Docs. 124, 126).  For the reasons set forth below, it is recommended that Plaintiff's Motions be denied.

**I.    Background**

Plaintiff filed her Complaint (R. Doc. 1) against Defendants, SC Tiger Manor, LLC; Equifax; Experian Information Solutions, Inc. ("Experian"); and IQ Data Int., Inc., on October 16, 2019, in which she alleges Defendants violated the Fair Credit Reporting Act and the Fair Debt Collections Practices Act.[1]  The dispute arises from an alleged debt Plaintiff incurred while a resident at Tiger Manor Apartments, which debt subsequently was reported to the "major credit bureaus."[2]  Plaintiff disputes the validity of the debt.[3]

The parties currently are engaged in discovery.  Multiple motions to compel currently are pending before this Court, four filed by Plaintiff (R. Docs. 78, 85, 86, 119) and one filed by

---

[1] R. Doc. 1, p. 1 ¶ 1.
[2] R. Doc. 1, pp. 3-5 ¶¶ 7-12.
[3] R. Doc. 1, p. 5 ¶ 13.

Defendant Experian (R. Doc. 116), as are myriad other discovery-related motions, all of which have been filed by Plaintiff.[4]  In the midst of this contentious discovery process, Plaintiff filed the instant Motion for Disqualification, seeking to disqualify the entire Middle District of Louisiana,[5] as well as the Motion to Change Venue, seeking to transfer this litigation to the District of Oregon.[6] Both Motions are addressed, in turn, below.

## II.     Law and Analysis

### A.     Motion for Disqualification

In her Motion for Disqualification, Plaintiff requests that "this district court / judicial district" disqualify itself "due to prejudice against Plaintiff."[7]  According to a "Declaration" by Plaintiff attached to her Motion, Plaintiff claims that this District Court is prejudiced against her based on a prior case she filed with this Court "against local public officials" in which, according to Plaintiff, this Court "denied [her] access to courts by unlawfully suppressing [her] legal action."[8] Plaintiff further alleges that this Court improperly dismissed that prior action with prejudice and that after that ruling was reversed on appeal by the Fifth Circuit Court of Appeal, "the district court started again to misapply the law to the facts, keep unseeing the facts, and do anything it could in order to asphyxiate [her] legal action against corrupt local public officials, in order to shield them from any liability and public embarrassment."[9]

---

[4] These include a Motion for Leave to Amend her Complaint (R. Doc. 80), along with two related Motions to Substitute (R. Docs. 90 and 91); a motion to order U.S. Marshals to serve subpoenas on third parties (R. Doc. 89); a Motion for Sanctions for Spoliation of Evidence (R. Doc. 93); a Motion to Extend Discovery Deadlines (R. Doc. 105); and a Motion to Strike declarations by national counsel for Defendant Equifax (R. Doc. 134).

[5] R. Doc. 106 at 1.

[6] R. Doc. 107 at 1.

[7] R. Doc. 106 at 1.

[8] R. Doc. 106-1 at 1 ¶ 2.

[9] *Id.*  Although Plaintiff does not otherwise identify this litigation, the Court believes it to be Civil Action No. 19-48, in which this Court initially granted Plaintiff's motion for voluntary dismissal of the case with prejudice, and later amended its order to dismiss the matter without prejudice prior to any ruling by the Fifth Circuit. *See* 3:19-cv-00048-SDD-RLB, R. Doc. 15.

With regard to her grievances against this Court pertaining to the current litigation, Plaintiff claims that while she has been trying "to obtain responsive discoverable information" in this case, "the district court has been ignoring [her] filings, delaying to address them for as long as possible, dismissing [her] evidence and assertions, and openly favoring [her] opponents that have been engaged in discovery obstruction."[10]   Per Plaintiff, this Court "has a preconceived opinion regarding [her] and [her] action, and has already made up its mind and ruled on [her] case, although there is no final judgment yet."[11]

In its Opposition, Defendant Equifax responds "that Plaintiff has failed to produce *any* shred of evidence of a bias, impropriety, or other valid reason for this Court to recuse itself (over ten months into this case)."[12]   In opposing both disqualification and transfer, Equifax further asserts that "personal displeasure does not afford [Plaintiff] the right to forum shop."[13]

Plaintiff seeks recusal here under either 28 U.S.C. § 144 or 28 U.S.C. § 455.[14]   According to § 144:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
>
> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

---

[10] R. Doc. 106-1 at 1-2 ¶ 4.
[11] *Id.* at ¶ 5.
[12] R. Doc. 124 at 1-2 (emphasis in original).
[13] *Id.* at 1.
[14] *See K & F Holdings, Ltd. v. Rouse's Enterprises, L.L.C.*, No. 16-293, 2017 WL 2778345, at *1 (M.D. La. June 27, 2017) (noting the two statutes governing recusal of District Court Judges are 28 U.S.C. § 144 and 28 U.S.C. § 455).

Courts have held that a *pro se* litigant may not obtain disqualification of a presiding judge under § 144 because a *pro se* litigant cannot meet the plain language of the statute requiring "a certificate of counsel of record stating that it [the affidavit in support of recusal] is made in good faith." *See Williams v. Magnolia Café*, No. 18-1020, 2019 WL 7343507, at *2 (M.D. La. Dec. 30, 2019) (finding "recusal under § 144 is not applicable" because "a *pro se* litigant cannot meet the plain language of the statute requiring 'a certificate of counsel of record stating that it [the affidavit in support of recusal] is made in good faith'"); *Gibson v. Gusman*, No. 14-2273, 2014 WL 6469507, at *3 (E.D. La. Nov. 17, 2014) (concluding that "a *pro se* litigant may not use 28 U.S.C. § 144 as a means to seek recusal"); *Larsen v. "Eleged" Fish & Wildlife Serv./or Outlaws*, No. 04-1919, 2004 WL 1698670, at *1 (E.D. La. July 28, 2004) ("§ 144 is inapplicable in the case of a *pro se* litigant"). As such, Plaintiff here cannot seek disqualification of any of the Judges assigned to this case under § 144.

The second statute governing disqualifications is 28 U.S.C. § 455, which provides, in pertinent part:

> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
>
> (b) He shall also disqualify himself in the following circumstances: (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding….

"Judicial disqualification is solely a question of law." *Larsen*, 2004 WL 1698670, at *1, *citing In re City of Houston*, 745 F.2d 925, 927 (5th Cir. 1984). "The burden of proof on the litigant in this regard is substantial, because a judge is presumed to be impartial." *Id.*, *citing NJIE v. Lubbock County Tex.*, 999 F.Supp. 858, 860 (N.D. Tex. 1998). In determining whether recusal is appropriate under § 455, the Fifth Circuit has stated that the standard is an objective one, with the "relevant inquiry" being "whether a reasonable man, were he to know all the circumstances,

would harbor doubts about the judge's impartiality. *Trevino v. Johnson*, 168 F.3d 173, 178 (5th Cir. 1999) (internal quotations omitted); *Green v. Stevenson*, No. 12-432, 2012 WL 2154123, at *3 (E.D. La. June 13, 2012). This showing must be based on specific facts so as to avoid giving a party a "random veto over the assignment of judges." *Capizzo v. State of Louisiana*, No. 99-138, 1999 WL 539439, at *1 (E.D. La. July 22, 1999) (citation omitted). Also, a § 455 claim "must not be so broadly construed that it becomes, in effect, presumptive, so that recusal is mandated upon the merest unsubstantiated suggestion of personal bias or prejudice." *Green*, 2012 WL 2154123, at *3, *citing U.S. v. Cooley*, 1 F.3d 985, 993 (10th Cir. 1993). "Judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *U.S. v. Landerman*, 109 F.3d 1053, 1066 (5th Cir. 1997).

Plaintiff here, rather than seeking disqualification of a particular judge, instead seeks disqualification of this entire judicial district. Because the statutes invoked do not contemplate such disqualification, and because the undersigned has no knowledge of or connection with the prior case in this Court that Plaintiff claims is the root of the discrimination she allegedly is suffering, the Court here will—and can—only focus on the instant litigation and the individual Judges assigned thereto.

First, Plaintiff has wholly failed to allege any facts to support her belief that there is any bias or prejudice against her by the District Judge assigned to this case because he has not yet issued any substantive rulings in this matter.[15] Similarly, Plaintiff has in no way shown bias or prejudice against her by Magistrate Judge Wilder-Doomes, to whom the case originally was assigned before being transferred to the undersigned. None of Plaintiff's alleged grievances

---

[15] The Court notes that District Judge deGravelles has issued a single non-substantive order pertaining to this case (R. Doc. 74), invoking this Court's General Order 2020-4 which applies to all non-inmate pro se cases and refers all dispositive motions in such cases to the United States Magistrate Judge assigned to the case.

involve any of the rulings by Magistrate Wilder-Doomes prior to this case being transferred to the undersigned. Further, none of the Judges currently or previously assigned to this case had any involvement with the prior litigation that Plaintiff referenced as the basis for the instant Motion.

Plaintiff's litany of grievances, rather, primarily pertain to this Court's handling of the parties' discovery disputes, which have resulted in Plaintiff filing numerous motions related to discovery, and the actions and/or rulings by the undersigned. One of Plaintiff's central complaints centers around the imposition of a protective order in response to a motion by Defendants. Plaintiff disagrees with this Court's decision to grant Defendants' request for a protective order and claims that, in granting Defendants' request, the Court accepted all of Defendants' allegations as "true facts" and "dismissed" her presentation of opposing evidence.[16] She claims that the imposition of this protective order allowed Defendants, specifically Tiger Manor, "to continue with its discovery abuse" and takes issue with this Court's simultaneous denial of Plaintiff's then-pending motion to compel against all Defendants, *without prejudice*, in light of the newly-imposed protective order.[17] This simply is not the case. The ruling with which Plaintiff disagrees imposed a protective order requested by Defendants, which did nothing more than allow Defendants to mark certain documents as confidential and set forth the parameters for dealing with documents so classified.[18] It in no way limits the documents Plaintiff can obtain or absolves Defendants of their obligation to appropriately respond to Plaintiff's discovery requests.[19] Further, as previously stated, Plaintiff's then-pending motion to compel was denied without prejudice, and since that time, Plaintiff has refiled that motion to compel, which now is pending before the Court.[20] Simple

---

[16] R. Doc. 107-1 at 3-4.
[17] *Id.* at 4.
[18] *See* R. Doc. 73-1.
[19] *See id.* at 4.
[20] *See* R. Doc. 86.

displeasure with a Court's ruling is not a reason for disqualification of a judge, particularly here, when the ruling being lambasted by Plaintiff is one that does not ultimately deny a request of Plaintiff or otherwise prejudice her in any way.

Other instances of perceived wrongs by this Court, as alleged by Plaintiff, include the fact that this Court "admonished" her to conduct herself with professionalism and instructed her to "refrain from any further derogatory comments or unnecessary disparagement of Defendants or defense counsel"[21] while failing to issue the same admonition to Defendants who, per Plaintiff "repeatedly made derogatory comments and attacked Plaintiff's credibility."[22]  The Court issued this instruction to Plaintiff in response to her characterization of some documents produced by Defendants in response to her discovery requests as well as some of her comments about the Defendants.[23]  Further, the Court took no action against Plaintiff or sanctioned her in any way; rather, because Plaintiff is proceeding *pro se* and is not an attorney, the Court took the opportunity to remind her to adhere to an appropriate level of professionalism.[24]

Plaintiff further takes issue with the speed at which this Court is ruling on her pending motions, claiming that while she "brought discovery resistance issues before the Court again," her filings have been "lying dormant for months, prior to being disposed of."[25]  She also claims that "[i]t can be clearly observed from the record that the Court affords Defendants any strategical advantage and manages its docket in such a manner that Plaintiff cannot possibly succeed in this

---

[21] R. Doc. 73 at 12.

[22] R. Doc. 107-1 at 3, 10.

[23] For example, she has characterized some documents produced by Defendants in response to her discovery requests as "e-garbage" and "non-responsive garbage."  (R. Doc. 56-1 at 64; R. Doc. 65 at 10).  She also has stated that "Experian got a nerve to claim that Plaintiff caused the delay [in discovery responses]…"  (R. Doc. 65 at 10-11).  Further, she has claimed that the Defendants continued "pushing their inaccurate deceptive misrepresentations of all the facts."  (R. Doc. 65 at 10).  This is in no way an exhaustive list; rather, it is simply a small representation of a few examples from only two (2) different pleadings filed by Plaintiff.

[24] *See* R. Doc. 73 at 12 ("the Court admonishes Plaintiff that, although proceeding *pro se*, she still is to conduct herself with the professionalism expected of all people appearing in front of this Court").

[25] R. Doc. 107-1 at 6.

case because nearly all critical information has been refused to her."[26]  Similarly, she claims that "this Court will not do anything to manage discovery process and there will [be] no consequences for discovery abuse."[27]  Plaintiff claims that evidence of this can be seen in the fact that the Court has failed to rule on some of her motions while ruling "with lightning speed" on two (2) of Defendants' motions.[28]  Plaintiff further alleges that the Court rules promptly on motions "when it is advantageous to Defendants," citing to an order by this Court denying Plaintiff's motion to suppress her own deposition until she had received all requested discovery responses.[29]

What Plaintiff fails to mention in her Motion is that since October 1, 2020, Plaintiff alone has filed no less than 23 different motions in this litigation, including the two instant motions, 10 for which this Court has already issued a ruling.  Further, none of these arguments show any prejudice to Plaintiff by the Court.  Plaintiff appears displeased with the lack of immediate rulings by this Court on her numerous discovery motions and seems to think that the Court's failure to rule on everything before the end of the fact discovery deadline is somehow indicative of the Court's partiality toward Defendants.  It is not.  It is simply a reflection of the caseload of this Court and the extreme frequency with which Plaintiff has been filing discovery motions—*e.g.*, she filed 13 separate motions in only the month before the fact discovery deadline.  The Court will address each and every one of Plaintiff's motions in due course, and all discovery disputes will be resolved.  Plaintiff's displeasure at the speed of the Court's rulings or the rulings themselves do not establish prejudice on the part of the undersigned or any Judge in this Court.

---

[26] *Id.* at 6-7.
[27] *Id.* at 6.
[28] *Id.* at 7.  The Court notes that these two defense motions referenced by Plaintiff (R. Docs. 100 and 102) are an uncontested motion to strike an inadvertently filed duplicate document and an uncontested motion to substitute a document that originally was filed without all necessary electronic signatures, neither of which required a substantive ruling.
[29] *Id.* at 7, citing to R. Doc. 97.

Finally, Plaintiff seems to misunderstand the rulings of the Court thus far.  In her Motion, she claims that the Court has "sustained" objections by Defendants to her discovery requests.[30]  However, the Court has not yet ruled on any of Plaintiff's pending Motions to Compel, so such an assertion is baseless and premature.

Plaintiff has failed to provide any other specific facts that would lead a reasonable and objective person to question the impartiality of the undersigned, Magistrate Judge Wilder-Doomes, or the District Judge or that would demonstrate any personal bias of any judicial officer assigned to this case.  Recusal of the entire court and the assigned judges is not warranted here.  It, therefore, is recommended that Plaintiff's request for disqualification pursuant to either §144 or § 455 be denied.

**B.      Motion to Change Venue**

Plaintiff's Motion to Change Venue seeks a transfer of this case to the District of Oregon based on Plaintiff's belief "that she will be unable to get an impartial judgment in this judicial district."[31]  In support of her request, Plaintiff claims both that "no party has any ties with the state of Louisiana," alleging each Defendant is domiciled or operates in a state other than Louisiana and asserting that she is now a citizen of Oregon.[32]  In its opposition to Plaintiff's Motion to Change Venue, Equifax again argues that while Plaintiff may not agree with all rulings by this Court, "personal displeasure does not afford her the right to forum shop."[33]  Equifax further argues that "Plaintiff has failed to come forward with any basis for why venue is not proper in this court (the venue she selected when she filed this case over ten months ago)."[34]

---

[30] R. Doc. 107-1 at 9.
[31] R. Docs. 107-1 at 1; 107.
[32] R. Doc. 107-1 at 12-13.
[33] R. Doc. 126 at 1.
[34] *Id*. at 1-2.

Plaintiff here seeks a transfer of venue pursuant to 28 U.S.C. § 1404(a).[35]  According to §

1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court

may transfer any civil action to any other district or division where it might have been brought or

to any district or division to which all parties have consented."  There can be no question but that

the district courts have "broad discretion in deciding whether to order a transfer." *In re Volkswagen*

*of Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008), *citing Balawajder v. Scott,* 160 F.3d 1066, 1067

(5th Cir. 1998) (*quoting Caldwell v. Palmetto State Sav. Bank,* 811 F.2d 916, 919 (5th Cir. 1987)).

The Fifth Circuit has held:

> As to the appropriate standard, in *Humble Oil* we noted that "the avoidance of
> dismissal through § 1404(a) lessens the weight to be given" to the plaintiff's choice
> of venue and that, consequently, "he who seeks the transfer must show good cause."
> This "good cause" burden reflects the appropriate deference to which the plaintiff's
> choice of venue is entitled.  When viewed in the context of § 1404(a), to show good
> cause means that a moving party, in order to support its claim for a transfer, must
> satisfy the statutory requirements and clearly demonstrate that a transfer is "[f]or
> the convenience of parties and witnesses, in the interest of justice.

*Id.* at 315, *citing Humble Oil & Refining Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir.

1963) (internal citations omitted).  "It is well-settled that the movant bears the burden of showing

why a transfer of venue under § 1404(a) is warranted."  *Becnel v. Smile Community Action Agency,*

*Inc.*, 207 F.Supp.2d 520, 522 (M.D. La. 2001) (citation omitted).

The parties here have not consented to a transfer.  Thus, as consent of the parties is not

applicable, the pertinent question under § 1404(a) is whether this case "might have been brought"

in the destination venue.  *In re Volkswagen*, 545 F.3d at 312.  28 U.S.C. § 1391, which governs

venue for "all civil actions brought in district courts of the United States," provides, in pertinent

part:

> (b) A civil action may be brought in (1) a judicial district in which any defendant
> resides, if all defendants are residents of the State in which the district is located;

---

[35] R. Doc. 107-1 at 1.

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Here, Plaintiff claims that "no party has any ties with the state of Louisiana, and, in fact, many different forums / judicial districts…would be appropriate forums."[36]  Plaintiff then attempts to identify the residency of all Defendants, as well as defense counsel, claiming that since none of them reside in Louisiana, according to her determinations, "[t]he requested transfer will not prejudice Defendants"[37] and that "[a]ll or nearly all Defendants can be sued in any state of the United States."[38]  These assertions are both baseless and fail to address the requirements of the governing statute.  Not only does Plaintiff fail to do an exhaustive and legally correct analysis of the residency of each Defendant, but Plaintiff also does not even allege that a single Defendant is a resident of Oregon, the district to which she seeks transfer.

Further, none of the events giving rise to the claim here at issue occurred in Oregon.  This case arises out of a debt allegedly incurred by Plaintiff when she was residing at Tiger Manor Apartments in Louisiana, which debt was then allegedly unlawfully reported to the credit agency Defendants.  Because no Defendants resides in Oregon and none of the events giving rise to this litigation occurred in Oregon, this claim could not have been brought in the District of Oregon under § 1391, and as such, the statutory requirements of § 1404(a) cannot here be met.

This Motion to Change Venue is unusual in that Plaintiff, who initially selected the venue in which to file her case, is the one seeking transfer.  At the time she filed suit, Plaintiff herself

---

[36] R. Doc. 107-1 at 12-13.
[37] R. Doc. 107 at 1.
[38] R. Doc. 107-1 at 13.

resided in Baton Rouge, which is within this Court's judicial district.  Her subsequent move to Oregon in no way makes the District of Oregon an appropriate destination for transfer of this case.

Because the Court finds that this case could not have been brought in the District of Oregon, and none of the Defendants have consented to transfer, the Court need not weigh the convenience of parties or witnesses,[39] as the remaining statutory requirements of § 1404(a) cannot here be met.  Also, as discussed above, having found no prejudice or bias against Plaintiff in this district, which is the basis for Plaintiff's request, Plaintiff has not shown good cause to transfer venue on her asserted grounds of judicial bias and prejudice because none exists.  As such, transfer to the District of Oregon is not possible and is not warranted here, even if it were a possibility.  It, therefore, is recommended that Plaintiff's Motion to Change Venue be denied.

## IV.    Conclusion

Plaintiff's assertions here are based on Plaintiff's generalized, subjective belief of prejudice and fail to articulate any details sufficient to support of her allegations of prejudice by any of the judges of this Court in order to satisfy the requirements of 28 U.S. § 144 and 28 U.S. § 255, or to warrant a transfer of this case to the District of Oregon.  As such, and for the foregoing reasons,

---

[39] *See Haughton v. Plan Adm'r of Xerox Corp. Ret. Income Guarantee Plan,* 2 F.Supp.3d 928, 936 (W.D. La. 2014) (noting that "typical" venue transfers involve consideration of "a number of 'not necessarily exhaustive or exclusive' private and public interest factors" which include the following private interest factors: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive" and the following public interest factors: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law").

**IT IS RECOMMENDED** that Plaintiff's Motion for Disqualification pursuant to 28 U.S.C. §§ 144 and 455 (R. Doc. 106) and Motion to Change Venue (R. Doc. 107) both be **DENIED**.

Signed in Baton Rouge, Louisiana, on January 28, 2021.

_____
**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**