UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

LYDIA McCOY                                                          CIVIL ACTION

VERSUS                                                                    NO. 19-723-JWD-SDJ

SC TIGER MANOR, LLC, ET AL.

---

# ORDER

Before the Court are the following two motions, both filed by *pro se* Plaintiff Lydia McCoy: (1) Motion to Compel Defendants' Discovery Responses filed on November 11, 2020 (R. Doc. 86), and (2) Motion for Sanctions for Spoliation of Evidence filed on November 23, 2020 (R. Doc. 93). Plaintiff's Motion to Compel seeks an order compelling Defendants, SC Tiger Manor, LLC ("Tiger Manor"); Equifax Information Services LLC ("Equifax"); Experian Information Solutions, Inc. ("Experian"); and IQ Data Int., Inc. ("IQ Data"), to produce documents in response to various requests for production propounded by Plaintiff. Oppositions to Plaintiff's Motion to Compel have been filed by Equifax (R. Doc. 111), Tiger Manor (R. Doc. 112), and Experian (R. Doc. 113). Plaintiff's Motion for Sanctions seeks to have Defendants "be sanctioned for spoliation of evidence and withholding of critical and controlling responsive information."[1] Only Defendant Equifax filed an Opposition to Plaintiff's Motion for Sanctions (R. Doc. 121). Both of these Motions are addressed, in turn, below. The Court recognizes that additional discovery motions, including a motion to compel, have been filed in this case and will address those in separate orders.

---

[1] R. Doc. 93 at 1.

I.      Background

Plaintiff filed her Complaint (R. Doc. 1) against Defendants, Tiger Manor, Equifax, Experian, and IQ Data on October 16, 2019. In her Complaint, which Plaintiff amended for the second time on April 22, 2020 (R. Doc. 49), Plaintiff alleges Defendants violated the Consumer Credit Protection Act.[2] Against Tiger Manor only, Plaintiff also brings claims for breach of contract, fraud, and intentional infliction of emotional distress.[3] The dispute arises from Plaintiff's tenancy at Tiger Manor Apartments.[4] While a tenant at Tiger Manor Apartments, Plaintiff claims a "wall-mounted air conditioning and heating unit" in her apartment "discharge[ed] gallons of water inside the apartment" and that attempts to repair it were unsuccessful.[5] Per Plaintiff, due to the water intrusion, "the floors became damaged and mold grew under the laminate boards."[6] Subsequently, Tiger Manor "added several hundred of some fees" to her monthly rent, which, Plaintiff alleges, was unauthorized.[7] Plaintiff eventually moved out of Tiger Manor Apartments; the circumstances surrounding her departure are disputed.[8]

Subsequently, "about a month" after Plaintiff moved out of Tiger Manor Apartments, Defendant IQ Data sent Plaintiff "a demand to pay close to around $3400.00 that it claimed plaintiff owed to Tiger Manor," though "Tiger Manor never provided the plaintiff with the move-out statement."[9] Plaintiff disputed the validity of the alleged debt, which debt IQ Data eventually

---

[2] R. Doc. 49 at 1. The Court notes that in her initial Complaint, Plaintiff alleged Defendants violated the Fair Credit Reporting Act and the Fair Debt Collections Practices Act. R. Doc. 1 at 1 ¶ 1. However, those claims are not included in Plaintiff's second Amended Complaint.
[3] R. Doc. 49 at 10-12 ¶¶ 46-48.
[4] *Id.* at 3 ¶ 8.
[5] *Id.*
[6] *Id.*
[7] *Id.* ¶ 9.
[8] *Compare* R. Doc. 49 at 3 ¶¶ 8-9 *with* R. Doc. 132 at 3.
[9] R. Doc. 49 at 3 ¶ 10.

reported "to the major credit bureaus," thereby negatively impacting Plaintiff's credit score and ability to obtain credit.[10] Plaintiff, in turn, filed the instant lawsuit.

On July 28, 2020, Plaintiff filed a Motion to Compel against Defendants Tiger Manor, Equifax, and Experian seeking documents in response to various requests for production propounded by Plaintiff. On September 16, 2020, this Court issued an Order denying this Motion to Compel without prejudice following imposition of a Protective Order in this case (R. Doc. 73). On November 11, 2020, Plaintiff reurged her previously-filed Motion to Compel, amending it to also include a request for discovery responses from IQ Data, in addition to those directed at the other Defendants (R. Doc. 86). Oppositions to this Motion to Compel have been filed by Defendants Equifax (R. Doc. 111), Tiger Manor (R. Doc. 112), and Experian (R. Doc. 113).

## II. Law and Analysis

### A. Motion to Compel

#### 1. Legal Standard

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). "For purposes of discovery, relevancy is construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue related to the claim or

---

[10] *Id.* at 4 ¶¶ 11-13.

defense of any party." *Tingle v. Hebert*, No. 15-626, 2016 WL 7230499, at *2 (M.D. La. Dec. 14, 2016) (quoting *Fraiche v. Sonitrol of Baton Rouge*, 2010 WL 4809328, at *1 (M.D. La. Nov. 19, 2010)) (internal quotations omitted).

The court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

Rule 34 of the Federal Rules of Civil Procedure provides for the discovery of documents and tangible items. A party seeking discovery must serve a request for production on the party believed to be in possession, custody, or control of the documents or other evidence. Fed. R. Civ. P. 34(a). The request is to be in writing and must set forth, among other things, the desired items with "reasonable particularity." Fed. R. Civ. P. 34(b)(1)(A).

A party must respond or object to interrogatories and requests for production in writing within 30 days of service. *See* Fed. R. Civ. P. 34(b)(2)(A). This default date may be modified by stipulation between the parties. Fed. R. Civ. P. 29(b). If a party fails to respond fully to discovery requests in the time allowed by the Federal Rules of Civil Procedure, the party seeking discovery may move to compel responses and for appropriate sanctions under Rule 37. An "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4).

The party filing the motion to compel "bears the burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence." *Tingle*, 2016 WL 7230499, at *2 (quoting *Mirror Worlds Techs., LLC v. Apple Inc.*, No. 13-419,

2016 WL 4265758, at *1 (E.D. Tex. Mar. 17, 2016)). "Once the moving party establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad or unduly burdensome or oppressive, and thus should not be permitted." *Id.* (quoting *Mirror Worlds*, 2016 WL 4265758, at *1). *See also Wymore v. Nail*, No. 14-3493, 2016 WL 1452437, at *1 (W.D. La. Apr. 13, 2016) ("Once a party moving to compel discovery establishes that the materials and information it seeks are relevant or will lead to the discovery of admissible evidence, the burden rests upon the party resisting discovery to substantiate its objections."). "A trial court enjoys wide discretion in determining the scope and effect of discovery." *Sanders v. Shell Oil Co.*, 678 F.2d 614, 618 (5th Cir. 1982) (citation omitted).

### 2. Plaintiff's Requests to Tiger Manor

In her requests for discovery responses from Defendant Tiger Manor, Plaintiff notes that she submitted four sets of discovery requests to Tiger Manor—Set One on January 13, 2020; Set Two on January 20, 2020; Set Three on February 12, 2020; and Set Four on February 20, 2020.[11] Per Plaintiff, Tiger Manor has responded to her discovery requests "with invalid, violative of the law general objections by using which it attempted to relieve itself from responding to formal discovery, and has not produced a single responsive document…"[12] In this Motion to Compel, Plaintiff seeks documents to be produced in response to the following five (5) requests for production: Request to Produce No. 1 from "Set Two" of Plaintiff's Discovery Requests and Requests to Produce Nos. 2, 3, 4, and 5 from "Set Three" of Plaintiff's discovery requests. Plaintiff's requests, and Tiger Manor's responses thereto, are addressed below.

---

[11] R. Doc. 86-1 at 1.
[12] *Id.*

### a. Request to Produce No. 1, Set Two

Plaintiff's Request to Produce No. 1 asks Tiger Manor to "[p]roduce the copies of all maintenance requests that [Plaintiff] submitted to SC Tiger Manor, LLC or its hired management service company/representative in connection with the cooling system unit issues in her rented apartment between August, 2018 and October, 2018," along with additional specified information about each maintenance request.[13] Tiger Manor, in its response, objects to the request, arguing that it exceeds the scope of permissible discovery, seeks irrelevant evidence, and "seek[s] information documents concerning allegations and claims asserted in a prior, unrelated litigation by Plaintiff against Defendant."[14] Further, in its Opposition to Plaintiff's Motion to Compel, Tiger Manor states that it "is not actually in possession of those documents" because it "does not actually participate in the day to day management or maintenance of the property" and that the "property management company with whom Tiger Manor contracted at the time in question likewise is not in possession of those documents…as they no longer manage the Tiger Manor property."[15] Per Tiger Manor, "[t]he undersigned counsel for Tiger Manor has advised Plaintiff on numerous occasions that Tiger Manor is not withholding responsive documents" and that it "simply does not have any responsive documents to produce."[16]

While the Court disagrees with Tiger Manor's argument that this request exceeds the scope of discovery and seeks irrelevant evidence, the fact remains that Tiger Manor has claimed unequivocally that it is not in possession of the documents being requested and has nothing to

---

[13] *Id.* at 2.
[14] *Id.*
[15] R. Doc. 112 at 3. The Court notes that Tiger Manor makes additional arguments as to the impropriety of this request by Plaintiff, but the Court finds that those arguments, which pertain to the cancellation of Plaintiff's lease, relate to the merits of Plaintiff's case.
[16] *Id.* at 1-2.

produce.[17]  As such, the Court will **deny** Plaintiff's request.  However, in an effort to resolve this impasse, Tiger Manor is instructed, **within 14 days** of the date of this Order, to provide Plaintiff with the name of the "property management company with whom Tiger Manor contracted at the time in question" and the most recent contact information Tiger Manor has for that company.

### b.  Requests to Produce Nos. 2 and 5, Set Three

Plaintiff's Requests to Produce Nos. 2 and 5 seek certain unidentified "documentary evidence" from Tiger Manor.  Request to Produce No. 2 requests "documentary evidence that show [sic] that [Plaintiff] owes to Tiger Manor the debt that is being reported to the credit bureaus as [Plaintiff's] debt."[18]  And Request to Produce No. 5 seeks "documentary evidence that would demonstrate how Tiger Manor verified the alleged [Plaintiff's] debt to the credit bureaus and what documentation was sent for verification purposes."[19]

In its response and objections thereto, Tiger Manor argues that these requests are "overly broad, vague, ambiguous" as well as "unduly burdensome" because they do not specify and/or reasonably identify what documents are being sought from Tiger Manor.[20]  Tiger Manor also

---

[17] The Court recognizes that, under Federal Rule of Civil Procedure 34(a)(1), a party is required to respond to a request for the production of documents by producing all responsive documents "in the responding party's possession, custody, or control."  The question, then, is whether documents held by the management company could be considered to be in Tiger Manor's possession or custody.  "[T]he nature of the relationship between the party and nonparty corporation is the key to determining the sufficiency of control for purposes of Rule 34."  *Dugas v. Mercedes-Benz USA, LLC*, No. 12-2885, 2014 WL 3848110, at *3 (W.D. La. Aug. 5, 2014) (internal quotations and citation omitted).  As further explained by the *Dugas* court:
> [E]ven if a party does not have actual possession of requested documents, [it] can be compelled to produce them if [it] has 'control' of them—that is, the right or ready ability to obtain possession.  This standard does not require that the party have control over the operations of the nonparty, only that it have either the right to obtain possession of the documents or the ready ability to obtain possession of the documents.  However, a close relationship between the corporate entities might indicate that such control over documents exists.

*Id.*  Here, Tiger Manor claims it contracted with a property management company.  Although said company is not identified in either Plaintiff's Motion or Tiger Manor's Opposition, given that the company's business is managing properties, nothing indicates to the Court that Tiger Manor had a special relationship with it such that it has the right or ready ability to obtain possession of documents from it.  The Court, however, does not have enough information to make a definitive determination at this time.
[18] R. Doc. 86-1 at 3.
[19] *Id.*
[20] *Id.* at 3-5.

objects that these requests "inappropriately attempt[] to shift the burden of proof on Tiger Manor to determine what documents are referenced in this request and/or relevant to claims and causes of action asserted."[21]  The Court agrees.  As set forth in Rule 34(b)(1)(A), a discovery request must set forth the desired items with "reasonable particularity." *See Minnis v. Bd. of Supervisors of La. State Univ. Agric. & Mech. College*, No. 13-05, 2013 WL 6271940, at *6 (M.D. La. Dec. 4, 2013) ("The goal is that the description be sufficient to apprise a man of ordinary intelligence which documents are required."); *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 575 (N.D. Tex. 2018) ("The test for reasonable particularity is whether the request places the party upon reasonable notice of what is called for and what is not.... All-encompassing demands that do not allow a reasonable person to ascertain which documents are required do not meet the particularity standard of Rule 34(b)(1)(A).")  Plaintiff has failed to do that here.  Tiger Manor could not have reasonably understood which documents, or even types of documents, Plaintiff is seeking regarding establishment or verification of a debt she owes to a different Party or Parties.  This finding is further supported by Tiger Manor's claim, in its Opposition, that it did not actually report any debt owed by Plaintiff to the credit bureaus.[22]  Because Plaintiff fails to describe the documents being sought in these discovery requests with "reasonable particularity," the Motion to Compel further responses to Requests to Produce, Nos. 2 and 5, is **denied**.

### c.  Request to Produce No. 3, Set Three

Similar to Request to Produce No. 2, Request to Produce No. 3 seeks "a copy of the alleged agreement, contract, or any other document, signed by [Plaintiff] that would validate the debt that Tiger Manor claims [Plaintiff] owes to it."[23]  Tiger Manor objects to this request as "overly broad,

---

[21] *Id.* at 3.  This is Tiger Manor's objection to Request to Produce No. 2.  Its objection to Request to Produce No. 5 is extremely similar, with only slightly different wording.  *See id.* at 4-5.
[22] R. Doc. 112 at 2.
[23] R. Doc. 86-1 at 3.

vague, ambiguous, and unduly burdensome as it does not specify or reasonably identify what documents are being sought or what 'alleged agreement, contract or other document' is being referenced, and inappropriately attempts to shift to Tiger Manor Plaintiff's burden of proof on the claims asserted in this litigation."[24] Tiger Manor continues in its response that it "is unable to identify what documents are being sought in response to Request to Produc[e] No. 3."[25] Tiger Manor elaborates on this argument in its Opposition, claiming that "it is unclear what documents Plaintiff actually seeks to recover through this request," particularly because, per Tiger Manor, "[t]he charges assessed Plaintiff's account by Tiger Manor in October 2018 are a result of Plaintiff's failure to pay rent and ultimate eviction – rights for which Tiger Manor is provided by general application of Louisiana law and not some specific document."[26]

Once again, the Court agrees with Tiger Manor that Plaintiff has failed to sufficiently identify the document or documents she is seeking here. For instance, Plaintiff seeks an "*alleged* agreement, contract, or any other document" but fails to identify which Party, if any, has alleged the existence of such "agreement, contract, or any other document" or whether any such document, in fact, exists. Plaintiff fails to describe adequately the "agreement, contract, or any other document, signed by [Plaintiff] that would validate [her] debt," and it is not the job of Tiger Manor to figure out what Plaintiff is looking for. As Plaintiff has again failed to set forth the document or documents being sought with "reasonable particularity," this request also must be **denied**.

### d. Request to Produce No. 4, Set Three

Request to Produce No. 4 requests "documentary evidence that would show how each and every penny of the alleged debt that Tiger Manor claims [Plaintiff] owes it has originated."[27] As

---

[24] *Id.* at 3-4.
[25] *Id.* at 4.
[26] R. Doc. 112 at 3.
[27] *Id.* at 4.

with the other requests, Tiger Manor again makes similar objections that this request is vague and ambiguous, "does not specify or reasonably identify what documents are being sought," and "inappropriately attempts to shift to Tiger Manor the burden of proving the claims asserted against it in this litigation or otherwise determining what documents…may be relevant to the claims asserted by Plaintiff against Tiger Manor in this litigation."[28]  In its Opposition, Tiger Manor further argues that this request is irrelevant to the claims asserted in this litigation because the validity of Plaintiff's debt is not at issue in this litigation.[29]  While the Court does not necessarily agree with this argument by Tiger Manor, given that Plaintiff's alleged debt appears to be central to this litigation, the Court once again agrees that this request is too vague and places the burden on Tiger Manor to figure out which document or documents Plaintiff seeks.  Without more, such as the type of "documentary evidence" being sought or even the amount or other identifying feature of "the alleged debt" itself, Tiger Manor cannot, from this request, determine what documents are being requested.  And need not.  Because this request also fails to comply with the requirements of Rule 34(b)(1)(A), it, too, is **denied**.  Further, it should be noted that, again, Tiger Manor has stated unequivocally that it is not withholding responsive documents and does not have any responsive documents to produce.[30]  A court cannot compel a party to produce that which it does not have.  *See Samsung Elecs. Am., Inc. v. Yang Kun Chung*, 321 F.R.D. 250, 299 (N.D. Tex. 2017) ("a party cannot produce what it does not have, and so, clearly, the court cannot compel a party to produce non-existent documents") (internal quotations, modifications and citation omitted).

---

[28] R. Doc. 86-1 at 4.
[29] R. Doc. 112 at 3.
[30] *Id.* at 1-2.

### 3. Plaintiff's Requests to Equifax

According to Plaintiff, she submitted requests for production of documents to Defendant Equifax on February 12, 2020.[31] In response, per Plaintiff, Equifax "responded with invalid objections as well as sent over some paper waste that is irrelevant and does not show how Equifax purportedly verified the alleged debt."[32] Plaintiff further argues that Equifax has "refused to provide a detailed description of the procedure that was purportedly used to reinvestigate and verify the alleged debt" and that it "should either provide responsive documents or have a default judgment entered against it for evidence spoliation."[33] Plaintiff then sets forth the five (5) requests for production submitted to Equifax by Plaintiff in her "Set Two" of discovery requests, along with Equifax's responses thereto.

In its Opposition to Plaintiff's Motion to Compel, Equifax states that it has produced "over two hundred documents to Plaintiff pursuant to her discovery requests" and that what Plaintiff considers "paper waste" is "actually all of the records in her Equifax file," including the verification of her debt.[34] As succinctly stated by Experian, "Simply put, Equifax has already produced all responsive documents to Plaintiff's requests" and "[t]here are no documents left to be produced."[35] Further, even though Equifax objected to each of Plaintiff's requests for production, Equifax also specified in four of its five responses that "Equifax is not withholding responsive documents on the basis of these objections."[36] In its fifth response, Equifax states that it "identifies the relevant policy and procedure manuals that Equifax will produce subject to a protective order"[37] and, in its Opposition, states that it produced its "dispute policies and

---

[31] R. Doc. 86-1 at 5.
[32] *Id.*
[33] *Id.*
[34] R. Doc. 111 at 3.
[35] *Id.*
[36] R. Doc. 86-1 at 6-7.
[37] *Id.* at 8.

procedures" and that "[h]undreds of pages of documentation was produced to Plaintiff pursuant to the Protective Order."[38]

Given Equifax's unequivocal averment that it has produced all responsive documents and that it has no documents left to produce, it appears to the Court that Equifax has complied with its discovery obligations. Further, Plaintiff does not identify any particular documents, or even types of documents, that she believes Equifax is withholding. As the Court cannot compel Equifax to produce that which it does not have, particularly after responding to Plaintiff's discovery requests, the Court hereby **denies** Plaintiff's request. *See Samsung*, 321 F.R.D. at 259.

### 4. Plaintiff's Requests to Experian

With regard to Defendant Experian, Plaintiff seeks responses to three (3) requests for production that were submitted by Plaintiff to Experian on February 12, 2020.[39] As argued by Plaintiff, "Experian did not produce documents that demonstrate how it verified the alleged debt" and "stated that it does not have any relevant documents in its possession."[40] Plaintiff also claims that Experian submitted "over 1000 pages" but that "only a few pages could be considered responsive documents."[41]

In its Opposition, Experian states unequivocally that it "has completed its production of responsive documents, both non-confidential and confidential, and fully complied with its discovery obligations."[42] As such, it takes issue with Plaintiff's assertions that Experian did not produce documents demonstrating how it verified the alleged debt and that Experian stated it had no relevant documents, both of which Experian argues are untrue.[43] Experian then provides copies

---

[38] R. Doc. 111 at 3.
[39] R. Doc. 86-1 at 8.
[40] *Id.*
[41] *Id.*
[42] R. Doc. 113 at 1.
[43] *Id.* at 1-2.

of communications between counsel for Experian and Plaintiff, wherein counsel responds to questions from Plaintiff about the documents Experian had produced, including identifying the specific documents responsive to Plaintiff's requests within its production.[44] Per Experian, "[e]ven were [Plaintiff's] Motion to Compel granted, Experian has already produced the information in its possession responsive to the requests cited in the motion."[45]

The Court need not delineate each request by Plaintiff. In response to all three requests by Plaintiff, while Experian makes specific objections, it also states, in response to each, that it "will produce relevant, non-privileged documents responsive to this Request."[46] Experian, therefore, did not withhold documents based on any objections it asserted. Further, Plaintiff has again failed to identify the specific documents, or the types of documents, she believes Experian has not produced. As evidenced by email communications between Plaintiff and counsel for Experian, Experian has even identified responsive information within its document production for Plaintiff in response to her allegations that Experian failed to produce certain requested documents.[47] Here, given Plaintiff's failure to specifically identify the deficiency of Experian's productions, coupled with Experian's unequivocal assertion that it already has produced all responsive documents, the Court **denies** Plaintiff's request.

### 5. Plaintiff's Request to IQ Data

Plaintiff's last request is directed at IQ Data. Per Plaintiff, she submitted discovery requests to IQ Data on February 12, 2020. In this Motion to Compel, Plaintiff seeks responses to her Request to Produce No. 4, which seeks "copies of ALL 'correspondence' and documentation that IQ Data Int., Inc., sent to Experian Information Solutions, Inc., and Equifax Information

---

[44] *Id.* at 2-3; R. Doc. 113-1; R. Doc. 113-2.
[45] *Id.* at 4.
[46] R. Doc. 86-1 at 9-10.
[47] R. Doc. 113 at 2-3.

Services, Inc., in connection with the purported debt that it reports to the credit bureaus as [Plaintiff's] debt."[48] Plaintiff does not include a response from IQ Data to this request in her Motion, indicating IQ Data never provided such a response. Further, given the fact that IQ Data did not file an opposition to Plaintiff's Motion, the Court has no additional information regarding this particular discovery request. As such, IQ Data is instructed to provide a response to Plaintiff's Request to Produce No. 4 **within 21 days** of the date of this Order.

### 6. Rule 37 Conferences

Finally, as some relief is being granted to Plaintiff in this Order, the Court notes that if, after receiving the information and/or response compelled herein, there remain any disputes as to the sufficiency of those productions and/or responses, the Parties involved in that dispute are **ordered** to confer pursuant to Rule 37 **in good faith**. Any subsequent motion to compel that may be filed based on the discovery requests in Plaintiff's Motion to Compel here at issue must set forth in the appropriate certification: (1) who participated in the Rule 37 conference, (2) how it was conducted (*e.g.*, by phone), (3) how long the conference lasted (in minutes), (4) the topics or areas that were addressed, and (5) the topics that were resolved and/or remain outstanding. Failure to confer in good faith is grounds for dismissal of a discovery motion. *See Robinson v. Potter*, 453 F.3d 990, 995 (8th Cir. 2006) ("Because Robinson cannot show the parties attempted to confer in good faith to resolve the discovery request, the district court did not abuse its discretion in denying the motion."); *Compass Bank v. Shamgochian*, 287 F.R.D. 397, 400 (S.D. Tex. 2012) (denying motion to compel for failure to satisfy Rule 37's requirement of a good faith attempt to confer). Further, given this resolution, the Court cannot foresee a situation where this Motion will need to be brought before the Court again and reminds the parties—and Plaintiff in particular—that filing

---

[48] R. Doc. 86-1 at 11.

discovery motions with the Court should be a recourse of last resort. *See, e.g., Draper v. Bank of Am., N.A.*, No. 11-505, 2012 WL 12878606, at *2 (W.D. Tex. Mar. 7, 2012) (regarding discovery matters, "[n]either side should seek determinations from this Court, except as a last resort").

### B. Motion for Sanctions

On November 23, 2020, Plaintiff filed a Motion for Sanctions for Spoliation of Evidence against Defendants (R. Doc. 93), requesting that "Defendants…be sanctioned for spoliation of evidence and withholding of critical and controlling responsive information."[49] Per Plaintiff, "[t]here is no doubt that Defendants engaged in sabotaging of discovery and spoliation of evidence as the majority of responsive documents have been refused to Plaintiff."[50] While her request appears to encompass all Defendants, Plaintiff focuses her complaints on Defendants Tiger Manor and Equifax. Regarding Tiger Manor, Plaintiff argues, in part, that "Tiger Manor made no evidence available to Plaintiff, and deprived Plaintiff of any and all relevant evidence, and a drastic measure such as entering a default judgment against Tiger Manor would be appropriate."[51] She continues: "There is no doubt that Tiger Manor has engaged in spoliation of evidence willfully and acted in bad faith, thus any harsh sanctions against it could be imposed."[52] Plaintiff takes a similar "scorched earth" approach to Equifax, alleging that Equifax "manufactured evidence in order to conceal that it not only failed to reinvestigate but even to mail the results of purported reinvestigation to Plaintiff," allegedly because Equifax mailed the results of its investigation of her dispute of her debt to the wrong address and later "manufactured" papers to include the correct

---

[49] R. Doc. 93 at 1.
[50] R. Doc. 93-1 at 1.
[51] *Id.* at 4.
[52] *Id.*

address.[53] Per Plaintiff, "Equifax fabricated evidence after this lawsuit has been filed, on advice of its attorney(s)."[54]

"Spoliation of evidence is the destruction or the significant and meaningful alteration of evidence." *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015) (internal quotations and citation omitted). Stated another way, spoliation of evidence "refers to the intentional destruction of the evidence for the purpose of depriving the opposing party of its use at trial." *Herster v. Bd. of Supervisors of La. State Univ.*, 221 F.Supp.3d 791, 796 (M.D. La. 2016). An adverse inference is permitted against the spoliator or sanctions against the spoliator only upon a showing of "bad faith" or "bad conduct." *Guzman*, 804 F.3d at 713 (citing *Condrey v. SunTrust Bank of Ga.*, 431 F.3d 191, 203 (5th Cir. 2005)).

Here, the Court need not even reach the issue of whether Defendants have acted with "bad faith" or whether imposition of adverse inference instructions are warranted here because the Court finds Defendants have not engaged in spoliation of evidence. Plaintiff has provided no evidence whatsoever that any Defendant, including either Tiger Manor or Equifax, has destroyed or meaningfully altered evidence. Plaintiff's bold and unsubstantiated accusation that Equifax manufactured evidence is equally unsupported by any evidence from Plaintiff. While Plaintiff accuses Equifax of changing the address on the report of its reinvestigation of Plaintiff's dispute, she does not provide a copy of the documents in question or otherwise explain how Equifax's alleged mailing of the results of her reinvestigation to an incorrect address for Plaintiff translates to Equifax concealing that it failed to reinvestigate, as alleged by Plaintiff in her Motion.[55] The Court, at this point, has nothing on which to base a finding that Equifax meaningfully altered

---

[53] *Id.* at 5.
[54] *Id.* at 5-6.
[55] R. Doc. 93-1 at 5.

evidence. The Court, therefore, will not sanction Defendants, particularly in the draconian ways suggested by Plaintiff, in the absence of any evidence of wrongdoing. An allegation of spoliation cannot be based solely on Plaintiff's displeasure with the results of her discovery requests, which appears to be the case here. As such, Plaintiff's Motion for Sanctions is **denied**.

### III. Conclusion

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion to Compel Defendants' Discovery Responses (R. Doc. 86), is **GRANTED IN PART** and **DENIED IN PART**. Defendant Tiger Manor is **ordered** to provide Plaintiff with the name of the "property management company with whom Tiger Manor contracted at the time in question" and the most recent contact information Tiger Manor has for that company **within 14 days** of the date of this Order. Defendant IQ Data is instructed to provide a response to Plaintiff's Request to Produce No. 4 **within 21 days** of the date of this Order. In all other respects, Plaintiff's Motion to Compel is **denied**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Sanctions for Spoliation of Evidence (R. Doc. 93) is **DENIED**.

Signed in Baton Rouge, Louisiana, on April 8, 2021.

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**