# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**LYDIA McCOY**

**VERSUS**

**SC TIGER MANOR, LLC, et al.**

**CIVIL ACTION**

**NO. 19-723-JWD-SDJ**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on February 11, 2022.

_____

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**

## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**LYDIA McCOY**

**VERSUS**

**SC TIGER MANOR, LLC, et al.**

**CIVIL ACTION**

**NO. 19-723-JWD-SDJ**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court are two Motions for Summary Judgment, one filed by Defendant Equifax Information Services LLC ("Equifax") (R. Doc. 177), and the other filed by Defendant Experian Information Solutions, Inc. ("Experian") (R. Doc. 178). Plaintiff Lydia McCoy, who is proceeding *pro se* in this litigation, opposes these Motions (R. Doc. 213). Both Equifax and Experian filed Replies in response to Plaintiff's Opposition (R. Docs. 214 and 215). Because the Motions for Summary Judgment raise similar arguments, and because Plaintiff responded to both in a single Opposition, the Court addresses them together in this Report and Recommendation. Oral argument is not necessary. Having considered the Motions, supporting memoranda, and exhibits; Plaintiff's Opposition; and applicable legal authorities, the Court finds Equifax and Experian are entitled to summary judgment regarding Plaintiff's claims against them.[1] Accordingly, it is recommended that Equifax and Experian's Motions be granted and that all of Plaintiff's claims against these two Defendants be dismissed with prejudice.

---

[1] The Court notes that Plaintiff also filed a Motion for Summary Judgment (R. Doc. 181), seeking, *inter alia*, summary judgment on liability issues against all Defendants, including Equifax and Experian. The Court also has considered the arguments made by Plaintiff therein in reaching its recommendation that summary judgment should be granted in favor of Equifax and Experian.

## I.     BACKGROUND

### A.     Preliminary Note Regarding *Pro Se* Plaintiff

Although Plaintiff is representing herself, a "court is not required to search for or try to create causes of actions or find material issues of fact for *pro se* plaintiffs." *Berry v. LoanCity*, 489 F.Supp.3d 441, 447 (M.D. La. 2020) (citing *Kiper v. Ascension Parish Sch. Bd.*, No. 14-313, 2015 WL 2451998, at *1 (M.D. La. May 21, 2015)). Indeed, "a pro se litigant is not 'exempt … from compliance with relevant rules of procedural and substantive law.'" *NCO Financial Systems, Inc. v. Harper–Horsley*, No. 07–4247, 2008 WL 2277843, at *3 (E.D. La. May 29, 2008) (quoting *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir.1981)). "A pro se litigant is not entitled to greater rights than would be a litigant represented by a lawyer." *Id*. (citing *Birl*, 660 F.2d at 593). In addition, "[e]ven pro se litigants may not oppose summary judgment motions with unsworn materials." *Turner v. Baird*, 707 F. App'x. 290, 291 (5th Cir. 2017) (*per curiam*).

All the facts in this section are taken from the Statements of Undisputed Material Facts provided by both Equifax and Experian.[2] First, the only competent summary judgment evidence was provided by Equifax and Experian.[3] Neither Plaintiff's Amended Complaint nor her Opposition were sworn or verified under 28 U.S.C. § 1746.[4] Second, Plaintiff did not file a proper statement of contested facts, as required by Local Civil Rule 56(c), which provides, in pertinent part:

> A party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of material facts. The opposing statement shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation as required by this rule.

---

[2] R. Doc. 177-2 and R. Doc. 178-2, respectively.

[3] Plaintiff did not attach documentary evidence to either her Amended Complaint (R. Doc. 49), the operative pleading in this case, or her original Complaint (R. Doc. 1).

[4] While Plaintiff does attach a sworn declaration to her Opposition, it provides no evidence, or even substantive allegations, in support of her claims; rather, as discussed below, it only focuses on this Court's alleged mishandling of Plaintiff's case.

Each such statement shall begin with the designation "Admitted," "Denied," or "Qualified" and, in the case of an admission, shall end with such designation.

Here, while Plaintiff filed an Opposition, she did not file her own Statement of Facts, much less one that (a) complies with Local Civil Rule 56(c) by "admitt[ing], deny[ing], or qualify[ing] the facts by reference to each numbered paragraph of the moving party's statement of material facts" or (b) complies with Local Civil Rule 56(f), which requires "assertion[s] of fact set forth in a statement of material facts [to] be followed by a citation to the specific page or paragraph of identified record material supporting the assertion." Rather, with her Opposition memorandum, Plaintiff filed a "Declaration of Lydia McCoy" in support of her Opposition in which she primarily lambasts both Defendants and the Middle District of Louisiana ("Middle District") as having worked to prevent her from effectively obtaining discovery in this case.[5] Accordingly, Defendants' Statement of Undisputed Material Facts are deemed admitted under Local Civil Rule 56(f) because they are properly supported by record citations.[6] *See Reams v. Nielsen*, No. 18-389, 2021 WL 1085309, at *2 (M.D. La. Mar. 3, 2021) (deeming defendant's Statement of Undisputed Material Facts admitted under Local Civil Rule 56(f) because it is properly supported by record citations, given that plaintiff did not file a proper statement of contested facts).[7]

---

[5] R. Doc. 213-1.

[6] Local Civil 56(f) states, in part: "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted. An assertion of fact set forth in a statement of material facts shall be followed by a citation to the specific page or paragraph of identified record material supporting the assertion. The court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment."

[7] The Court does note that in her Opposition to Defendants' Motions for Summary Judgment, Plaintiff makes the accusation that the declarations provided by employees of Equifax and Experian are "fraudulent." R. Doc. 213 at 3. *See* Declaration of Anna Simmons at R. Doc. 178-3 at 2-8; Declaration of Nadia Reynaga-Moreno at R. Doc. 177-3 at 1-9. In particular, Plaintiff claims that the Declaration of Ms. Simmons is fraudulent because it violates 28 U.S.C. § 1746 in that it does not contain the required mandatory certification. R. Doc. 213 at 3. However, § 1746 is a rule "which permits unsworn declarations to substitute for an affiant's oath if the statement contained therein is made 'under penalty of perjury' and verified as 'true and correct.'" *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988) (citing 28 U.S.C. § 1746). Ms. Simmons' declaration is a sworn declaration, as she "on oath depose[s] and state[s] as follows," thereafter making her declaration. As such, § 1746 is inapplicable. With regard to Ms. Reynaga-Moreno's declaration, Plaintiff takes issue because it contains what the Court interprets only as a typographical error. As such, the Court finds these two declarations to be competent evidence.

B.      **Relevant Factual and Procedural Background**

1.      **Plaintiff's Tenancy with Tiger Manor Apartments**

Plaintiff became a tenant at Tiger Manor Apartments on or about March 10, 2015.[8] Plaintiff signed an Apartment Lease Contract with SC Tiger Manor, LLC ("Tiger Manor"), on December 26, 2017, for rental of an apartment with an initial lease term of December 26, 2017, to June 11, 2018 ("Lease").[9] However, the Lease would automatically renew on a month-to-month basis unless one of the parties provided sixty-day written notice of termination or intent to move out.[10] The Lease also specified that a tenant must provide "advance written notice" of his or her intent to vacate and that, if sufficient notice is not provided, the tenant will be responsible for an additional month's rent along with other financial penalties.[11] The tenant also was responsible for providing a forwarding address on or before termination of the lease.[12]

In October 2018, Plaintiff vacated her apartment at Tiger Manor without providing any written notice of her intent to move out.[13] Plaintiff also did not provide her forwarding address to Tiger Manor.[14] On or about October 10, 2018, Tiger Manor filed a Petition for Eviction against Plaintiff for nonpayment of rent.[15] The Justice of the Peace for East Baton Rouge Parish issued a default judgment in favor of Tiger Manor on October 16, 2018, noting that Plaintiff failed to appear.[16] In response to Plaintiff's departure, Tiger Manor assessed a lease termination fee, as well as additional fees for unpaid utilities, repairs, and cleaning needed based on damage to the

---

[8] R. Doc. 178-2 at 1 ¶ 2; R. Doc. 49 at 3 ¶ 8.
[9] R. Doc. 177-2 at 1 ¶¶ 1-2; R. Doc. 178-2 at 1 ¶ 3; R. Doc. 177-2 at 24; R. Doc. 178-8 at 2.
[10] R. Doc. 177-2 at 1 ¶ 2; R. Doc. 177-2 at 24; R. Doc. 178-8 at 2.
[11] R. Doc. 178-2 at 2 ¶¶ 4-6; R. Doc. 178-8 at 6; 177-2 at 28.
[12] R. Doc. 178-2 at 2 ¶ 7; R. Doc. 178-8 at 6; 177-2 at 28.
[13] R. Doc. 177-2 at 1 ¶ 3; 178-2 at 2 ¶¶ 8-9; R. Doc. 178-7 at 11 (34:19-35:2; 36:8-16).
[14] R. Doc. 178-2 at 2 ¶ 11; R. Doc. 178-7 at 26 (94:25-95:8).
[15] R. Doc. 178-2 at 2 ¶ 12; R. Doc. 178-9 at 2-3.
[16] R. Doc. 178-2 at 3 ¶ 13; R. Doc. 178-10 at 2.

apartment, as well as other charges.[17]  Plaintiff, however, claims she was authorized to move out

without prior notice due to issues with her air conditioning unit.[18]

### 2.    Plaintiff Files Disputes with Equifax and Experian

Tiger Manor subsequently engaged IQ Data International, Inc. ("IQ Data"), to collect the

$3,365.35 balance originally owed by Plaintiff to Tiger Manor, which process IQ Data began on

or about October 19, 2018.[19]  IQ Data sent a validation of debt, along with a copy of a move-out

statement from Tiger Manor detailing the amounts owed, to Plaintiff on or about November 20,

2018.[20]  IQ Data subsequently reported Plaintiff's debt to Equifax, Experian, and other credit

bureaus as a collection account with an account number ending in "7161" ("IQ Data Account").[21]

Plaintiff disputed her reported debt to both Equifax and Experian, each of which, in turn, conducted

a reinvestigation of Plaintiff's account, detailed separately below.

### a.    Plaintiff's Dispute to Equifax

On or about July 18, 2019, Equifax received a letter from Plaintiff regarding the IQ Data

Account, in which Plaintiff, *inter alia*, claimed the IQ Data Account was "a fraudulently reported

'debt.'"[22]  With her letter, Plaintiff also submitted a document describing Plaintiff's disputes with

Tiger Manor—including damages to the apartment, Tiger Manor's alleged failure to repair certain

damages, and unauthorized fees charged to Plaintiff by Tiger Manor—as well as documents

Plaintiff allegedly submitted to IQ Data and documents concerning maintenance requests.[23]

Plaintiff, however, did not dispute the fact that Tiger Manor had assessed fees against her or that

---

[17] R. Doc. 177-2 at 2 ¶ 5; R. Doc. 177-2 at 32.
[18] *Id.* at 2 ¶ 4; R. Doc. 178-7 at 16-17 (57:17-58:15).
[19] R. Doc. 177-2 at 2 ¶ 6; R. Doc. 177-2 at 31; R. Doc. 178-2 at 3 ¶ 14; R. Doc. 178-11 at 2.
[20] R. Doc. 178-2 at 3 ¶ 15; R. Doc. 178-12 at 2-6; R. Doc. 177-2 at 31-32.
[21] R. Doc. 177-2 at 2 ¶ 7; R. Doc. 177-3 at 6 ¶ 30; R. Doc. 178-2 at 3 ¶ 16; R. Doc. 178-3 at.5 ¶ 13.
[22] R. Doc. 177-2 at 2 ¶¶ 9-10; R. Doc. 177-3 at 8 ¶ 33; R. Doc. 177-3 at 32-35.
[23] R. Doc. 177-2 at 3 ¶¶ 11-12; R. Doc. 177-3 at 8 ¶ 33; R. Doc. 177-3 at 32-42.

IQ Data attempted to collect those fees.[24]  Plaintiff also did not include a copy of her Lease with Tiger Manor or any other documentation regarding the fees assessed her by Tiger Manor.[25]

### b.    Plaintiff's Dispute to Experian

On or about August 2, 2019, Experian received a letter from Plaintiff disputing only the IQ Data account on her credit report.[26]  Plaintiff's dispute letter also included a copy of November 10, 2018 correspondence from Plaintiff to IQ Data, disputing the IQ Data Account, a copy of shipping confirmation for same, a copy of November 27, 2018 correspondence from IQ Data to Plaintiff for collection of the IQ Data Account, a copy of maintenance requests by Plaintiff regarding the air conditioning unit in her apartment, a copy of Plaintiff's driver's license, and a flash drive containing videos of the air conditioning unit.[27]  Prior to sending this letter, Plaintiff had not initiated a dispute with Experian regarding the IQ Data Account.[28]  Plaintiff's dispute letter did not identify a particular factual inaccuracy in Experian's reporting of the IQ Data Account; rather, in her letter, Plaintiff criticized Tiger Manor for not properly fixing the air conditioning unit in her apartment, claiming that Plaintiff did not owe Tiger Manor because she had a legal right to discontinue her tenancy there based on their failure to repair said air conditioning unit.[29]  Plaintiff also did not claim that she made payments toward the IQ Data Account, that any personal information related to the IQ Data Account was inaccurately reported by Experian, that IQ Data had inaccurately reported debt in the past, or that IQ Data, or any representative thereof, had a personal relationship with Plaintiff or held a grudge against her.[30]  Further, Plaintiff did not

---

[24] R. Doc. 177-2 at 3 ¶ 13; R. Doc. 177-3 at 32-42.
[25] R. Doc. 177-2 at 3 ¶ 17; R. Doc. 177-3 at 32-42.
[26] R. Doc. 178-2 at 3 ¶¶ 16-17; R. Doc. 178-3 at 5-6 ¶ 14; R. Doc. 178-4.
[27] R. Doc. 178-2 at 3-4 ¶ 19; R. Doc. 178-3 at 5-6 ¶ 14; R. Doc. 178-4.
[28] R. Doc. 178-2 at 4 ¶ 20; R. Doc. 178-3 at 6 ¶ 15.
[29] R. Doc. 178-2 at 4 ¶ 21; R. Doc. 178-3 at 6 ¶ 16; R. Doc. 178-4 at 2-8.
[30] R. Doc. 178-2 at 4-5 ¶¶ 22-24, 26-27; R. Doc. 178-4 at 2-8.

question the reliability of IQ Data as a furnisher of information in her dispute letter.[31]  Experian, additionally, is not aware of any information indicating IQ Data is not a reliable furnisher of information or that Experian had any reason to question the reliability of any information provided by IQ Data.[32]

### 3. The Reinvestigation of Plaintiff's Account

Upon receiving Plaintiff's disputes of the IQ Data Account on her credit report, both Equifax and Experian reinvestigated the IQ Data Account.  The procedures followed by each and the results of each reinvestigation are detailed, separately, below.

### a. Equifax's Reinvestigation

Generally, upon receipt of a dispute from a consumer regarding information in his or her credit file, Equifax reviews and considers all relevant information provided by the consumer as well as the content of the consumer's credit file.[33]  If, after review, Equifax is able to make updates to the consumer's credit file, including, for example, change of name or address or removal of an account of someone who is deceased, Equifax will make such updates immediately.[34]  If further investigation is required, Equifax notifies the data furnisher of the consumer's dispute, describes all relevant information provided by the consumer, provides the consumer's Equifax account information to the data furnisher, and asks the data furnisher to investigate the dispute and advise Equifax if any of the account information is inaccurate.[35]  This generally is accomplished through Equifax's electronic transmission of an Automated Consumer Dispute Verification ("ACDV"); this ACDV process is the industry standard used by Equifax, Experian, and Trans Union, the three

---

[31] R. Doc. 178-2 at 5 ¶ 25; R. Doc. 178-3 at 6 ¶ 17; R. Doc. 178-4 at 2-8.
[32] R. Doc. 178-2 at 5 ¶ 28; R. Doc. 178-3 at 6 ¶ 17.
[33] R. Doc. 177-2 at 3 ¶ 18; R. Doc. 177-3 at 5  ¶ 16.
[34] R. Doc. 177-2 at 3-4  ¶ 19; R. Doc. 177-3 at 5  ¶ 17.
[35] R. Doc. 177-2 at 4  ¶¶ 20, 22; R. Doc. 177-3 at 5   ¶¶ 18-19.

major nationwide consumer reporting agencies.[36]  When submitting an ACDV to a data furnisher, Equifax will also include the documents provided by the consumer supporting his or her dispute.[37] Upon receipt of the dispute from Equifax, the data furnisher is required to conduct its own investigation and report the results of same to Equifax.[38]  If the data furnisher advises Equifax to delete or update the account information, Equifax takes the recommended action and notifies the consumer; however, if the data furnisher states it has no changes post-investigation, Equifax generally will not make any changes to the account.[39]  Upon completion of its reinvestigation of a dispute, Equifax sends the results of same to the consumer, along with a description of the procedures used to reinvestigate and a summary of the consumer's rights under the FCRA.[40]

With regard to Equifax's reinvestigation of Plaintiff's dispute, on or about July 21, 2019, Equifax sent an ACDV to IQ Data regarding the IQ Data Account, asking IQ Data to verify the information therein.[41]  With the ACDV, Equifax submitted the letter and attachments sent by Plaintiff in support of her dispute.[42]  IQ Data responded on July 29, 2019, verifying that the IQ Data Account was properly reporting on Plaintiff's credit file.[43]  On or about August 1, 2019, Equifax sent Plaintiff the findings of its reinvestigation, i.e., that the IQ Data Account was verified as accurate and belonging to Plaintiff.[44]

### b.    Experian's Reinvestigation

After receiving and reviewing Plaintiff's dispute letter and attachments, Experian began a reinvestigation of her account by sending an ACDV to IQ Data on August 10, 2019, asking IQ

---

[36] R. Doc. 177-2 at 4  ¶¶ 23-24; R. Doc. 177-3 at 5  ¶ 20.
[37] R. Doc. 177-2 at 4  ¶ 25; R. Doc. 177-3 at 5-6  ¶ 21.
[38] R. Doc. 177-2 at 4  ¶ 26; R. Doc. 177-3 at 6  ¶ 22.
[39] R. Doc. 177-2 at 5  ¶¶27-28; R. Doc. 177-3 at 6  ¶¶ 23-24.
[40] R. Doc. 177-2 at 5  ¶ 29; R. Doc. 177-3 at 6  ¶ 26.
[41] R. Doc. 177-2 at 5  ¶ 30; R. Doc. 177-3 at 8-9  ¶ 36; R. Doc. 177-3 at 45-58.
[42] R. Doc. 177-2 at 5  ¶ 31; R. Doc. 177-3 at 8-9  ¶ 36; R. Doc. 177-3 at 45-58.
[43] R. Doc. 177-2 at 5  ¶ 32; R. Doc. 177-3 at 8-9  ¶ 36; R. Doc. 177-3 at 45-46.
[44] R. Doc. 177-2 at 5  ¶ 33; R. Doc. 177-3 at 9  ¶ 37; R. Doc. 177-3 at 60-99.

Data to "[p]rovide complete ID and verify account information."[45]  Experian also provided a copy of all documents sent to Experian by Plaintiff, including her dispute letter and all attachments thereto.[46]  On August 13, 2019, IQ Data responded, verifying the accuracy of Experian's report, as well as updating the balance date of the IQ Data account and adding the "Original Delinquency Date"; no changes to the reporting of the balance of the IQ Data Account were made.[47]  The following day, August 14, 2019, Experian sent the results of its reinvestigation to Plaintiff, which results included an updated balance owed on the IQ Data Account, but that was the only change made to Experian's reporting.[48]

On or about July 9, 2019, prior to Experian's receipt of Plaintiff's dispute letter, IQ Data sent a letter to Plaintiff, explaining that IQ Data understood that Plaintiff claimed the IQ Data Account "is the result of fraud or identity theft" and requesting additional information from Plaintiff.[49]  Shortly thereafter, on July 22, 2019, Experian received a fraud alert notice for Plaintiff from another credit reporting agency through the Fraud Exchange Batch.[50]  However, after receiving a phone call from Plaintiff on September 16, 2019, in which Plaintiff requested removal of the fraud alert on her account, Experian deleted the fraud alert statement from Plaintiff's credit report.[51]

At the time of Plaintiff's dispute with Experian, Plaintiff's credit report included at least 13 other undisputed, potentially "negative" items in addition to the IQ Data Account, including a

---

[45] R. Doc. 178-2 at 5  ¶ 31; R. Doc. 178-3 at 7  ¶ 21; R. Doc. 178-5 at 2.
[46] R. Doc. 178-2 at 6  ¶ 32; R. Doc. 178-3 at 7  ¶ 22. The Court notes that while Experian references Exhibit A-2 in support of this contention, no Exhibit A-2 was submitted to the Court.
[47] R. Doc. 178-2 at 6  ¶¶ 33-34; R. Doc. 178-3 at 7  ¶ 23; R. Doc. 178-5 at 2.
[48] R. Doc. 178-2 at 6  ¶ 35; R. Doc. 178-3 at 8  ¶ 24; R. Doc. 178-6 at 2-9.
[49] R. Doc. 178-2 at 6  ¶ 36; R. Doc. 178-14 at 2.
[50] R. Doc. 178-2 at 6  ¶ 37; R. Doc. 178-3 at 8  ¶ 25.  The Court notes that while Experian references Exhibit A-5 in support of this contention, no Exhibit A-5 was submitted to the Court.
[51] R. Doc. 178-2 at 7  ¶¶ 38-39; R. Doc. 178-3 at 8  ¶ 26.  *See* FN 45, *supra*, regarding Exhibit A2.

past due collection account of over $4,100 as well as another past due collection account of over $1,100, both of which were first reported in May 2018.[52]

## C.    Defendants' Motions and the Parties' Arguments

Defendants moved for summary judgment on Plaintiff's claims, arguing Plaintiff has failed to establish any of the elements necessary for a successful claim under the FCRA.[53]  Specifically, Defendants allege that (1) Plaintiff has failed to show a factual inaccuracy in her credit report, instead alleging a legal dispute; (2) Defendants' reinvestigations of Plaintiff's dispute were reasonable; (3) Plaintiff cannot show actual damages caused by Defendants' alleged actions; and (4) Defendants did not act willfully.[54]

Plaintiff filed a brief, four-page Opposition to Defendants' Motions, which Opposition does not address a single substantive argument presented by Defendants in their Motions.[55] Plaintiff begins by claiming Defendants' Motions "are based in their entirety on fraud, deception, defamation of the plaintiff, false statements proof of which plaintiff had been diligently requesting through discovery for many months but not a single document has been produced to her to corroborate any of the deceptive defendants' statements."[56]  She then turns her ire to the Middle District of Louisiana in general, claiming it has "ensur[ed] that plaintiff has no meaningful access to courts and preclud[ed] the plaintiff from succeeding in this action."[57]  Next, Plaintiff takes issue with the fact that, to her knowledge, the "15 pages of corrections due to countless errors by an incompetent transcriber where nearly everything has been perverted and inaccurately and

---

[52] R. Doc. 178-2 at 7  ¶¶ 40-41; R. Doc. 178-13 at 2-11.
[53] R. Doc. 177-1 at 7; R. Doc. 178-1 at 13.
[54] R. Doc. 177-1 at 7-13; R. Doc. 178-1 at 13-26.
[55] R. Doc. 213. As explained above, Plaintiff's opposition does not comply with Local Civil Rule 56.  The Court also notes that the Opposition filed by Plaintiff, in addition to opposing the two instant Motions, also opposes a Motion for Summary Judgment filed by Defendant SC Tiger Manor, LLC (R. Doc. 180), which remains pending before the Court.
[56] R. Doc. 213 at 1.
[57] *Id.* at 1-2.

untruthfully 'transcribed'" were not adopted in the transcript from her deposition.[58]  Plaintiff then concludes by opposing the declarations attached to both Motions for Summary Judgment by employees of Equifax and Experian, claiming that they are "fraudulent" and violative of 28 U.S.C § 1746 as being unsworn.[59]

## II.    LAW AND ANALYSIS

### A.    Summary Judgment Standard

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  A party moving for summary judgment must explain the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no genuine issue of material fact.  *Celotex Corp.*, 477 U.S. at 322.  If the moving party carries its burden of proof under Rule 56, the opposing party must direct the court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor.  *Vanberge v. Haley*, No. 19-814, 2021 WL 400511, at *1 (M.D. La. Jan. 15, 2021), *report and recommendation adopted sub nom.*, 2021 WL 400537 (M.D. La. Feb. 4, 2021) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)).  This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  Rather, Rule 56 requires that summary judgment be entered against a party who fails to make a showing sufficient to

---

[58] *Id.* at 2-3.
[59] *Id.* at 3.

establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 323. Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party. *Little*, 37 F.3d at 1075. In resolving a motion for summary judgment, the court must review the facts and inferences in the light most favorable to the non-moving party, and may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). If a plaintiff is proceeding *pro se*, "[t]he district court does not have a duty to search the entire record to find evidence supporting the non-movant's opposition." *Watkins v. Experian Info. Solutions, Inc.*, No. 13-239, 2014 WL 12879669, at *4 (W.D. Tex. Sept. 8, 2014), *report and recommendation adopted*, 2014 WL 12879668 (W.D. Tex. Oct. 3, 2014) (citing *Jones v. Sheehan, Young, & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996)). "Rather, the non-movant must 'identify specific evidence in the record, and [] articulate the "precise manner" in which that evidence support[s] [her] claim.'" *Id.* (quoting *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)).

### B.    Analysis

In her Amended Complaint, Plaintiff brings claims against Equifax and Experian for violation of 15 U.S.C. § 1681i of the Fair Credit Reporting Act ("FCRA").[60] The FCRA "requires

---

[60] R. Doc. 49 at 9-10 ¶¶ 37-45. Specifically, Plaintiff asserts that Defendants failed to conduct a reasonable reinvestigation and delete the allegedly inaccurate debt item from Plaintiff's credit file; failed to provide all relevant information received from Plaintiff regarding her dispute to Tiger Manor and IQ Data; failed to provide Plaintiff "notice about purported frivolousness, irrelevancy, or insufficient information" regarding her dispute; failed to review and consider all relevant information submitted by Plaintiff; failed to "properly treat the inaccurate and unverifiable information" and failed "to promptly delete it" from Plaintiff's credit file; did not provide written notice to Plaintiff of their reinvestigation results within the time set forth in the provision, or at any later time, "in the manner, required by law and authorized by the plaintiff"; failed to provide to Plaintiff a written statement that the reinvestigation was completed, a consumer report based on the revised consumer file, and a notice that a description of the procedure used to determine the accuracy and completeness of the information was available to Plaintiff upon request; failed to notify Plaintiff that she had the right to add a statement to her credit file disputing the accuracy or completeness of the information; and failed to provide a description of the reinvestigation procedure after Plaintiff had requested it. *Id.*

13

that a credit reporting agency, upon receiving a notice of a dispute from a consumer, conduct a reasonable reinvestigation of the information in that consumer's file." *Barron v. Equifax Info. Servs., L.L.C.*, 802 F. App'x 161, 162 (5th Cir. 2020) (citing 15 U.S.C. § 1681i(a)(1)(A)).  To assert a claim under § 1681i, a plaintiff must establish: (1) she disputed the completeness or accuracy of an item of information contained in her consumer credit file held with the Credit Reporting Agency ("CRA") and that she notified the CRA directly of that dispute; (2) the CRA did not reinvestigate free of charge and either record the current status of the disputed information or delete the item from the plaintiff's file in the manner set forth by § 1681(a)(5) within the statutory period; (3) the CRA's noncompliance was negligent or willful; (4) the plaintiff suffered injury; and (5) the plaintiff's injury was caused by the CRA's failure to reinvestigate and record the current status of the disputed information or delete the item from the file." *Hammer v. Equifax Info. Servs, LLC*, No. 18-1502, 2019 WL 7602463, at *2 (N.D. Tex. Jan. 16, 2019) (citations omitted).  "Damages may be awarded to a consumer for injuries caused by a credit reporting agency's failure to comply with a requirement of the [FCRA]." *Barron*, 802 F. App'x at 162 (citing 15 U.S.C. § 1681o(a)(1)).  As explained below, Plaintiff's claims against Equifax and Experian fail as a matter of law.

### 1.    Whether Plaintiff Has Shown Her Credit Report Contains a Factual Inaccuracy

As this Court previously has determined, "to establish a failure to reinvestigate claim, Plaintiff must 'demonstrate that his credit file contained inaccurate information.'" *Swafford v. Experian Info. Solutions, Inc.*, No. 18-789, 2019 WL 5597310, at *4 (M.D. La. Aug. 27, 2019) *report and recommendation adopted*, 2019 WL 5616968 (M.D. La. Sept. 11, 2019) (citing *Watkins*, 2014 WL 12879669, at *7); *see also Boothe v. Equifax Info. Servs. LLC*, No. 21-1766, 2021 WL 5630839, at *3 (N.D. Tex. Dec. 1, 2021) ("to state a plausible § 1681i claim, a plaintiff

14

must plead that the credit report contained a factual inaccuracy") (collecting cases); *DeAndrade v. TransUnion LLC*, 523 F.3d 61, 67 (1st Cir. 2008) ("[T]he weight of authority in other circuits indicates that, without a showing that the reported information was in fact inaccurate, a claim brought under § 1681i must fail.") (collecting cases). "Therefore, proving inaccuracies in a credit report is an essential element of proving a violation under … § 1681i." *McDonald v. Equifax Inc.*, No. 15-3212, 2017 WL 879224, at *6 (N.D. Tex. Mar. 6, 2017). Similarly, "failure to establish a genuine issue of material fact as to accuracy is cause to grant summary judgment on a § 1681i claim." *Swafford*, 2019 WL 5597310, at *4 (citing *Watkins*, 2014 WL 12879669, at *7). "The Fifth Circuit has recognized that a 'credit entry may be "inaccurate" within the meaning of the statute either because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.'" *Hammer*, 2019 WL 7602463, at *2 (quoting *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 895 (5th Cir. 1998)). Plaintiff has the burden of proof that a report is inaccurate. *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1156, n.9 (11th Cir. 1991).

Here, the Court agrees with Equifax and Experian that Plaintiff has failed to demonstrate a factual inaccuracy in her credit report. Plaintiff's disputes with both Equifax and Experian focus on her disagreement with Tiger Manor; specifically, Plaintiff argues that she was entitled to terminate her lease and move out without prior notice because she had a "legal right" to do so.[61] She also claims that Tiger Manor was not authorized to assess the fees against her, which constitute

---

[61] In her dispute letters to both Equifax and Experian, Plaintiff states, "… I had a legal right to discontinue my tenancy based on their failure to repair the AC until <u>for 2 months</u>." R. Doc. 177-3 at 33; R. Doc. 178-4 at 4 (emphasis in original). Plaintiff further states in those letters, "[e]ven *if* I did have the agreement, I had a legal right to move out since even such a necessity as the AC unit in Louisiana hot and humid climate was not provided and was defective and the failure to fix it – over 2 months – is astounding!" R. Doc. 177-3 at 34; R. Doc. 178-4 at 6.

the debt at issue here.[62]  Thus, Plaintiff does not claim that either Equifax or Experian reported any

factually inaccurate information about the IQ Data Account.  Rather, Plaintiff claims only that

Tiger Manor did not have the authority to charge Plaintiff the fees assessed her, not that Equifax

or Experian incorrectly reported said debt.  Such a collateral attack on Plaintiff's reported debt is

not sufficient to establish a violation of § 1681i.  *See Clark v. Saxon Mortg. Co.*, No. 11-65, 2012

WL 1752698, at *4 (M.D. La. May 16, 2012) (because plaintiff "cannot show a factual inaccuracy

in the reporting, his FCRA claims … against the national consumer reporting agencies must …

fail"); *Boothe*, 2021 WL 5630839, at **4-6 (finding reporting of debt based on payment by

plaintiff that mortgage service considered late, though plaintiff did not, was not inaccurate, and

plaintiff failed to plead a plausible claim under § 1681i); *Hammer*, 2019 WL 7602463, at *2

(finding plaintiff's claims against Equifax under § 1681i fail because plaintiff "has not adequately

alleged that his consumer report included *inaccurate* information") (emphasis in original).

Because Plaintiff has provided no evidence that either Equifax or Experian reported

inaccurate information—and because Plaintiff did not even dispute Equifax and/or Experian's

claim to this effect in her Opposition to their Motions for Summary Judgment—Equifax and

Experian are, therefore, entitled to summary judgment on this issue alone.  However, out of an

abundance of caution, the Court will assess the other factors necessary for a claim pursuant to §

1681i.

---

[62] *See* R. Doc. 49 at 3 ¶ 9 ("Plaintiff was informed that from now on such fee, not authorized by the rental agreement, will be added regularly.  Being aware of fraudulent and underhanded practices of Tiger Manor and its representatives and not being bound by any agreement that, even if existed would be canceled out by Tiger Manor's failure to make necessary, major repairs for at least two months and by Tiger Manor's attempt to charge unauthorized fees, the plaintiff moved out.").

## 2.       Whether the Reinvestigations Conducted were Unreasonable

The second factor to consider in assessing a § 1681i claim is whether the CRA reinvestigated free of charge and either recorded the current status of the disputed information or deleted the item from the plaintiff's file in the manner set for by § 1681(a)(5) within the statutory period. "The FCRA imposes on consumer-reporting agencies a duty to conduct a reasonable investigation into any item a consumer disputes." *Morris v. Trans Union LLC*, 420 F.Supp.2d 733, 739 (S.D. Tex. 2006) (citing 15 U.S.C. § 1681i(a)(1)(A); *Pinner v. Schmidt*, 805 F.2d 1258, 1262 (5th Cir. 1986)).

Here, the evidence in the record indicates that both Equifax and Experian, upon receiving Plaintiff's dispute letter, notified IQ Data, the data furnisher, via separate ACDVs, of Plaintiff's dispute within days of receiving them.[63]  Additionally, both Equifax and Experian forwarded to IQ Data, along with the ACDVs, all documentation submitted by Plaintiff in support of her dispute.[64]  "The use of an ACDV form is an accepted method of communicating the details of a consumer dispute." *Morris*, 420 F.Supp.2d at 754 (S.D. Tex. 2006); *see also Cameron v. Greater New Orleans Fed. Credit Union*, No. 16-8514 c/w 16-12676, 2017 WL 3064967, at *3 (E.D. La. July 19, 2017) (finding that the ACDV sent to the data furnisher, without the plaintiff's dispute letters, was sufficient to notify the data furnisher of the nature of the dispute).  IQ Data then responded to the ACDVs, confirming that the debt was reported accurately.[65]  Both Equifax and Experian then sent the results of their reinvestigations to Plaintiff.[66]

---

[63] Equifax received Plaintiff's dispute letter on July 18, 2019 and sent its ACDV to IQ Data on July 21, 2019.  R. Doc. 177-2 at 2 ¶ 9, 5 ¶ 30.  Experian received Plaintiff's dispute letter on August 2, 2019 and sent its ACDV to IQ Data on August 10, 2019.  R. Doc. 178-2 at 3 ¶ 16, 5 ¶ 31.
[64] R. Doc. 177-2 at 5 ¶ 31; R. Doc. 177-3 at 45-58; R. Doc. 178-2 at 6 ¶ 32; R. Doc. 178-3 at 7 ¶ 22.
[65] R. Doc. 177-2 at 5 ¶ 32; R. Doc. 177-3 at 45-58; R. Doc. 178-2 at 6 ¶ 33; R. Doc. 178-5 at 2.
[66] R. Doc. 177-2 at 5 ¶ 33; R. Doc. 177-3 at 60-99; R. Doc. 178-2 at 6 ¶ 35; R. Doc. 178-6 at 2-9.

In her briefing, Plaintiff does not argue that Equifax or Experian were not reasonable in relying on IQ Data's verification of her debt and, in fact, admitted during deposition testimony that, to her knowledge, IQ Data had no history of inaccurate reporting and that it did not hold a grudge against her.[67]  Plaintiff also has produced no evidence that either Equifax or Experian had any knowledge that IQ Data was not a reputable source of information.

The Court notes that in certain situations a CRA may have a heightened duty to further reinvestigate beyond having the information verified by the data furnisher via an ACDV.  *See Pinner*, 805 F.2d at 1262 (finding it unreasonable for CRA to contact only the creditor for verification of a consumer's dispute when it knew of personal disagreements between the creditor and the consumer); *Stevenson v. TRW Inc*., 987 F.2d 288, 293 (5th Cir. 1993) (affirming jury finding that CRA violated § 1681i by relying only on ACDVs in investigation with large number of disputed accounts and allegations of fraud); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 287 (7th Cir. 1994) (heightened duty triggered only when the consumer alerts a CRA that the source may be unreliable or the CRA itself knows or should know that the source is not reliable); *but see Morris*, 420 F.Supp.2d at 739 (invective-laced railing against data furnisher not sufficient to raise a fact issue as to whether the CRA had a basis for questioning the data furnisher's reliability).

However, there is nothing in the record to trigger such heightened scrutiny in this case, as there is no evidence that IQ Data was an unreliable source of information and as this is not a highly complex dispute involving either a large number of accounts or fraud.  Further, Plaintiff has repeatedly asserted that identity theft is not at issue here.[68]  *See Watkins*, 2014 WL 12879669, at

---

[67] R. Doc. 178-7 at 22-23 (80:21-82:20).

[68] *See, e.g.,* R. Doc. 49 at 5 ¶ 18 ("Although it has been made abundantly clear from the plaintiff's dispute of the alleged debt and the evidence that she provided in support of thereof [sic] that the bogus debt was fraudulently *reported* by Tiger Manor and IQ Data, defendant Experian made it look like it fraudulently originated as if it was 'an identity theft,' notably still failing to investigate and delete the inaccurate information."); R. Doc. 178-7 at 57 (219:9-14).

*8 (finding nothing in the nature of the consumer's dispute or the data furnisher's response to put Experian on notice that further investigation was necessary as plaintiff does not claim that the data furnishers were unreliable sources of information and the nature of the dispute—which did not involve identity theft—did not warrant further investigation by Experian). As such, the Court finds it was reasonable for Equifax and Experian to rely on the information and verification provided by IQ Data, meaning their reinvestigations were reasonable and did not violate the FCRA. *See Fashakin v. Nextel Commc's*, No. 05-3080, 2009 WL 790350, at *10 (E.D.N.Y. Mar. 25, 2009) ("Where the consumer has given the [CRA] no reason to question the accuracy of the initial information provided by the subscriber, the [CRA] fulfills its obligation to reasonably reinvestigate by confirming the accuracy of the debt with the creditor.").

### 3. Whether Equifax or Experian Acted Negligently or Willfully and Whether Plaintiff Has Shown Actual Damages Caused by Equifax or Experian's Alleged Conduct

Because the remaining factors to consider—whether the CRA's alleged noncompliance was either negligent or willful and whether the plaintiff suffered injury caused by the CRA's failure to reasonably reinvestigate—are related, the Court will address them together here. In her Amended Complaint, Plaintiff seeks, *inter alia*, judgment against Equifax and Experian "for willful and negligent noncompliance with the law as defined by 15 U.S.C. § 1681n, 15 U.S.C. § 1692k, 15 U.S.C. § 1681o … "[69] The provisions of the FCRA giving rise to liability[70] provide for three types of damages depending on whether the violation in question was willful or negligent. *Cameron*, 2017 WL 3064967, at *2. If a plaintiff can prove a willful violation, she is entitled either to actual or statutory damages as well as, per the Court's discretion, punitive damages. *Id.* (citing 15 U.S.C. § 1681n). If the alleged violation is negligent, however, a plaintiff is entitled

---

[69] R. Doc. 49 at 12.
[70] These provisions are codified at 15 U.S.C. §§ 1681n and 1681o. *Cameron*, 2017 WL 3064967, at *2.

only to actual damages.  *Id.* (citing 15 U.S.C. § 1681o).  Thus, to recover any damages, a plaintiff must prove both actual damages as well as causation for a valid § 1681i claim.  *See Ruffin-Thompkins v. Experian Info. Solutions, Inc.*, 422 F.3d 603, 608 (7th Cir. 2005) ("Before any discussion of the reasonableness of the reinvestigation is necessary, however, [plaintiff] must show that she 'suffered damages as a result of the inaccurate information.'"); *Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 664 (7th Cir. 2001) (explaining that without a causal relation between the violation of the FCRA and the loss of credit, or some other harm, a plaintiff cannot obtain an award of actual damages); *Cahlin*, 936 F.2d at 1161 ("stress[ing]" that plaintiff "had the affirmative duty of coming forward with evidence supporting his claim" that the "alleged inaccurate report caused him harm").

While Plaintiff alludes to several alleged damages in her Amended Complaint and subsequent briefing, primarily a decreased credit score and resulting denial of credit, she provides no evidence to support these contentions.[71]  However, Plaintiff has failed to provide any evidence demonstrating how any such alleged harm was caused by the reporting of the IQ Data Account on her credit report.  Additionally, as stated above, Plaintiff's Opposition to Defendants' Motion for Summary Judgment does not respond to a single substantive argument made by either Equifax or Experian.  As such, she fails to provide any argument or evidence opposing Defendants' contention that Plaintiff cannot show that either Equifax or Experian caused her cognizable injury.  *See Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992) ("Mere conclusory allegations are not competent summary judgment evidence, and they are therefore insufficient to defeat or support a motion for summary judgment," and "non-movants [may not] rest upon mere allegations made in

---

[71] *See, e.g.*, R. Doc. 49 at 4 ¶ 13 ("IQ Data started reporting the alleged debt to the major credit bureaus, methodically adding interest and other fees every month.  Once the first report was sent, the plaintiff's credit score significantly decreased.  Plaintiff was no longer able to obtain credit and potential creditors cited the reason for denial as 'recent and severe delinquency,' reported by IQ Data.").

their pleadings without setting forth specific facts establishing a genuine issue worthy of trial."); *Int'l Shortstop*, 939 F.2d at 1263 ("Confronted with such a motion [for summary judgment], the nonmoving party must direct the court's attention to evidence in the record which demonstrates that it can satisfy a 'fair-minded jury' that it is entitled to verdict in its favor. This can be accomplished by tendering affidavits, depositions, and other materials which provide evidentiary support for its claim."). Thus, because Plaintiff has failed sufficiently to show she suffered any damages, emotional or otherwise, caused by either Equifax or Experian, the Court finds, once again, that Plaintiff's FCRA claims against Equifax and Experian must fail. *See Wagner v. BellSouth Telecomms., Inc.*, 520 F. App'x. 295, 298 (5th Cir. 2013) (finding plaintiff's FCRA claim against Equifax failed because plaintiff made no allegations and provided no evidence of damages suffered from a credit line reduction, meaning no viable economic damages claim, as well as provided no evidence of emotional damages "beyond her own conclusory assertions about emotional distress, which are insufficient to support an emotional damages award"); *Cahlin*, 936 F.2d at 1160 (granting summary judgment for CRA, in part, because plaintiff consumer "has utterly failed to produce any evidence tending to show that he was damaged as a result of an allegedly inaccurate … credit report.").[72]

---

[72] Along these same lines, throughout this case, Plaintiff has alleged that she never received the results of Equifax and Experian's reinvestigation of her account. *See, e.g.,* R. Doc. 49 at 4-5 ¶ 16 ("Defendants … not only had not removed the alleged debt but never acknowledged the receipt of the dispute and never mailed any correspondence in connection with the dispute, as required by law."); *Id.* at 5 ¶ 19 ("Being unable to resolve her dispute with the credit reporting agencies or even receive the requested debt verification and/or documentation … "); R. Doc. 178-15 at 5 (Plaintiff's response to RFP No. 2 by Experian asking for "[d]ocuments sufficient to show all Plaintiff's places of residence from June 1, 2019 to present": "OBJECTION …. Experian mailed the results of the dispute to the wrong address despite a clear, typed in caps and in bold, Plaintiff's authorization: 'RESPOND IN WRITING TO: Lydia McCoy … Dr. … LA …' The law is clear that Experian should have responded in the way and in the form the consumer authorized it. Experian mailed a request for Lydia McCoy's ID to the right address, provided as the address to receive any and all correspondence, related to the dispute, however, failed to mail the much anticipated and waited for results of its purported reinvestigation to the correct address. Thus, this request is absolutely irrelevant and likely submitted not in good faith."). At the beginning of her dispute letters to Defendants, Plaintiff states that the dispute is for "Lydia McCoy" and identifies as her "**current** physical address" an address on … Ave. in Louisiana. R. Doc. 178-4 at 2; R. Doc. 177-3 at 32 (emphasis added). At the end of her dispute letters, she writes "RESPOND IN WRITING TO:" and

As a final consideration, Plaintiff accuses Equifax and Experian of "willful" noncompliance with the FCRA. However, once again, Plaintiff cannot prove her allegations. "Where a violation has been found to be willful, 'a consumer reporting agency has typically misrepresented or concealed some or all of a credit report from a consumer.'" *Cameron*, 2017 WL 3064967, at *2 (quoting *Cousin v. Trans Union Corp.*, 246 F.3d 359, 372 (5th Cir. 2001)). "To be willful, such misrepresentations must be the result of either a knowing violation or reckless disregard of the law." *Id.* (quoting *Toliver v. Experian Info. Solutions, Inc.*, 973 F. Supp. 2d 707, 732 (S.D. Tex. 2013)). Here, while Plaintiff makes conclusory allegations of willful actions by Equifax and Experian, she cites no evidence and provides no substantive allegations that either Defendant committed either a knowing violation or acted in reckless disregard of controlling law. Rather, as set forth above, the evidence before the Court demonstrates that both Equifax and Experian followed industry-standard practices in reinvestigating Plaintiff's dispute and received verification from a reliable data furnisher of the accuracy of the debt. As such, no reasonable fact finder could find, based on the evidence submitted, that either Equifax or Experian acted willfully to violate the FCRA.

Here, Plaintiff has not satisfied any of the factors necessary for establishing a violation of § 1681i. Plaintiff also has both failed to address any of the arguments raised by either Equifax or

---

lists a "mailing address" that is different than her "current physical address." R. Doc. 178-4 at 8; R. Doc. 177-3 at 35. Thus, Plaintiff complains because Defendants sent the results of their reinvestigation to the address designated by Plaintiff as her "current physical address." The Court will not further entertain this argument by Plaintiff, as Plaintiff has made absolutely no showing of a causal connection between this alleged violation of § 1681, *i.e.*, failure to provide notice, and any actual damage, such as the loss of credit. *Kuehling v. Trans Union, LLC*, 137 F. App'x 904, 909 (7th Cir. 2005) (unpublished) (finding that plaintiff failed to produce evidence of a loss of credit or other harm causally linked to the mailing mistake and noting that "if the reinvestigation report had been sent to the correct address, nothing would have been different"); *Jianqing Wu v. Trans Union*, No. 03-1290, 2006 WL 4729755, at *10 (D. Md. May 2, 2006), *aff'd sub nom. Jianqing Wu v. Equifax*, 219 F. App'x 320 (4th Cir. 2007) (finding Equifax's failure to provide certain notices to plaintiff was a harmless omission, as evidence indicates plaintiff was informed of his rights under the FCRA).

Experian in their Motions for Summary Judgment and failed to identify any facts genuinely in dispute. In addition, the only competent summary judgment evidence came from Defendants.[73] As such, the Court finds that Equifax and Experian are entitled to summary judgment.

## III.    CONCLUSION AND RECOMMENDATION

Accordingly,

**IT IS RECOMMENDED** that both the Motion for Summary Judgment filed by Defendant Equifax (R. Doc. 177) and the Motion for Summary Judgment filed by Defendant Experian (R. Doc. 178) be **GRANTED** and that all of Plaintiff Lydia McCoy's claims against Defendants Equifax and Experian be **DISMISSED WITH PREJUDICE**.

Signed in Baton Rouge, Louisiana, on February 11, 2022.

_____
**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**

---

[73] Plaintiff did not attach any documents to her Amended Complaint (R. Doc. 49), which is the operative pleading in this case; she also did not attach any evidentiary support to her original Complaint (R. Doc. 1). In fact, Plaintiff states in her Opposition that she "has been precluded … from obtaining a single essential piece of evidence" in this case. R. Doc. 213 at 4. While the Court heartily disagrees with Plaintiff's characterization, as explained in prior rulings (*See* R. Docs. 138 and 140), Plaintiff admits she has no supporting evidence for her claims. *See also* R. Doc. 213-1 at 1 ¶ 3 ("In the above-entitled action in particular, I have been very diligent with discovery, but have not been provided with a single document or information, essential to my legal action that would clearly show that I do not owe anything to tiger manor [sic] and that other defendants failed their duty to reinvestigate and timely delete fraudulent 'debt.'").