**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

**LYDIA McCOY**

**VERSUS**

**SC TIGER MANOR, LLC, et al.**

**CIVIL ACTION**

**NO. 19-723-JWD-SDJ**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on September 23, 2022.

*/s/ Scott Johnson*

**SCOTT D. JOHNSON
UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **LYDIA McCOY** | |
| | **CIVIL ACTION** |
| **VERSUS** | |
| | **NO. 19-723-JWD-SDJ** |
| **SC TIGER MANOR, LLC, et al.** | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Before the Court is a Motion for Summary Judgment filed by Defendant IQ Data International, Inc., on April 1, 2022 (R. Doc. 235). Plaintiff Lydia McCoy, who is proceeding *pro se* in this litigation, opposes this Motion (R. Doc. 237). No reply has been filed, and oral argument on this Motion is not necessary. Having considered the Motion, supporting memorandum, and exhibits; Plaintiff's Opposition; and applicable legal authorities, the Court finds that IQ Data is entitled to summary judgment regarding Plaintiff's claims against it. Accordingly, it is recommended that IQ Data's Motion for Summary Judgment be granted and that all of Plaintiff's claims against IQ Data be dismissed with prejudice.

**I.    BACKGROUND**

    **B.    Relevant Factual and Procedural Background**[1]

Plaintiff began leasing an apartment at Tiger Manor Apartments, run by Defendant SC Tiger Manor, LLC, on or around March 10, 2015.[2] At some time in October 2018, Plaintiff vacated her apartment at Tiger Manor, leaving without providing the requisite notice of her intention to move out.[3] On or about October 10, 2018, Tiger Manor filed a Petition for Eviction against

---

[1] All of the facts in this section are taken from IQ Data's Statement of Undisputed Material Facts. Plaintiff did not attach documentary evidence to her Amended Complaint (R. Doc. 49), the operative pleading in this case, her original Complaint (R. Doc. 1), or her Opposition to IQ Data's Motion for Summary Judgment (R. Doc. 237).
[2] R. Doc. 235-2 at 1 ¶ 1.
[3] *Id.* at 2 ¶¶ 9-10.

2

Plaintiff due to nonpayment of rent.[4] Several days later, on October 16, 2018, the Justice of the Peace for the Parish of East Baton Rouge issued a default judgment in favor of Tiger Manor, noting that Plaintiff had failed to appear for the hearing.[5] As a result of Plaintiff's departure, Tiger Manor assessed certain fees against Plaintiff, including a lease termination fee; fees for unpaid utilities, repairs, and cleaning due to damage to the apartment; and charges for a missing gate card, door key, and parking sticker.[6] These charges totaled $3,365.35.[7]

Tiger Manor subsequently engaged IQ Data to collect this outstanding amount from Plaintiff, and IQ Data began its collection efforts on or about October 19, 2018.[8] IQ Data ultimately reported the debt to the credit bureaus as a collection account with an account number ending in "7161."[9] On or about November 20, 2018, IQ Data sent Plaintiff a validation of the debt, which included a Move-Out Statement from Tiger Manor, providing a line-item list of the amounts owed.[10]

Later, on July 19, 2019, IQ Data, in response to an Automated Consumer Dispute Verification request[11] from credit bureau Equifax Information Services, LLC, IQ Data verified that the IQ Data Account was accurate and properly reporting on Plaintiff's credit file.[12] Around this same time, on August 2, 2019, credit bureau Experian Information Solutions, Inc., received a letter from Plaintiff disputing the debt.[13] In response, Experian sent an ACDV to IQ Data on August 10,

---

[4] *Id.* at 3 ¶ 14.
[5] *Id.* ¶ 15.
[6] *Id.* ¶ 16.
[7] *Id.* at 4 ¶ 18.
[8] *Id.* ¶¶ 17-18.
[9] *Id.* ¶ 20.
[10] *Id.* ¶ 21.
[11] Per IQ Data, an ACDV request is "a request that a data furnisher investigate a consumer dispute and confirm that the account information reported to the credit bureau is accurate." R. Doc. 235-1 at 4.
[12] R. Doc. 235-2 at 4-5 ¶ 23.
[13] *Id.* at 5 ¶ 24.

3

2019, to which IQ Data timely responded on August 13, 2019, verifying the accuracy of Experian's reporting of the IQ Data Account.[14]

On October 16, 2019, Plaintiff filed suit against Tiger Manor, IQ Data, Experian, and Equifax, challenging the above-referenced debt and Defendants' reporting of same.[15] This Court previously granted Motions for Summary Judgment filed by Experian and Equifax, dismissing all of Plaintiff's claims against them with prejudice.[16] The undersigned also has issued a Report and Recommendation recommending that a Motion for Summary Judgment filed by Tiger Manor be granted.[17] That R&R remains pending before the District Judge.

## II.    LAW AND ANALYSIS

### A.    IQ Data's Statement of Undisputed Facts Deemed Admitted

As a preliminary matter, this Court notes that, as Plaintiff has provided no substantive opposition to IQ Data's Motion for Summary Judgment and did not respond to IQ Data's Statement of Undisputed Material Facts, the Court here deems IQ Data's Statement of Undisputed Material Facts admitted. *See Reams v. Nielsen*, No. 18-389, 2021 WL 1085309, at *2 (M.D. La. Mar. 3, 2021), *report and recommendation adopted*, 2021 WL 1080931 (M.D. La. Mar. 19, 2021) (deeming defendant's Statement of Undisputed Material Facts admitted under Local Civil Rule 56(f) because it is properly supported by record citations and because plaintiff did not file a proper statement of contested facts).

Here, Plaintiff, in her Opposition or otherwise, has not filed a proper statement of contested facts, as required by Local Civil Rule 56. As mandated by Local Civil Rule 56(c):

> A party opposing a motion for summary judgment shall submit with its opposition
> a separate, short, and concise statement of material facts. The opposing statement

---

[14] *Id.* at 6 ¶¶ 28-29.
[15] R. Doc. 1; R. Doc. 49.
[16] R. Doc. 228; R. Doc. 232.
[17] R. Doc. 252.

4

>  shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation as required by this rule. Each such statement shall begin with the designation "Admitted," "Denied," or "Qualified" and, in the case of an admission, shall end with such designation.

Here, while Plaintiff filed an Opposition, she did not file her own Statement of Facts, much less one that complies with either Local Civil Rule 56(c) by "admitt[ing], deny[ing] or qualify[ing] the facts by reference to each numbered paragraph of the moving party's statement of material facts," or Local Civil Rule 56(f), which requires "assertion[s] of fact set forth in a statement of material facts [to] be followed by a citation to the specific page or paragraph of identified record material supporting the assertion." Accordingly, IQ Data's Statement of Undisputed Material Facts is deemed admitted under Local Civil Rule 56(f) because it is supported by record citations.[18] Moreover, the Court here notes that the only competent summary judgment evidence has been provided by IQ Data.[19] Neither Plaintiff's Amended Complaint nor her Opposition were sworn or verified under 28 U.S.C. § 1746.

### B.  Summary Judgment Standard

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A party moving for summary judgment must explain the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with

---

[18] Local Civil 56(f) states, in part: "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted. An assertion of fact set forth in a statement of material facts shall be followed by a citation to the specific page or paragraph of identified record material supporting the assertion. The court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment."

[19] As stated above, Plaintiff did not attach documentary evidence to her Amended Complaint (R. Doc. 49), the operative pleading in this case; her original Complaint (R. Doc. 1); or her Opposition to IQ Data's Motion for Summary Judgment (R. Doc. 237).

5

affidavits, if any, that show that there is no genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. Stated another way, "[i]f the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by showing that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim." *Garcia v. LVNV Funding LLC*, No. 08-514, 2009 WL 3079962, at *2 (W.D. Tex. Sept. 18, 2009). If the moving party carries its burden of proof under Rule 56, the opposing party must direct the court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. *Vanberge v. Haley*, No. 19-814, 2021 WL 400511, at *1 (M.D. La. Jan. 15, 2021), *report and recommendation adopted sub nom.*, 2021 WL 400537 (M.D. La. Feb. 4, 2021) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The nonmoving party satisfies this burden "by submitting or referring to evidence, [which] set out specific facts showing that a genuine issue exists." *Garcia*, 2009 WL 3079962, at *2.

This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Rather, Rule 56 requires that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322. Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party. *Little*, 37 F.3d at 1075.

In resolving a motion for summary judgment, the court must review the facts and inferences in the light most favorable to the non-moving party and may not evaluate the credibility of

witnesses, weigh the evidence, or resolve factual disputes. *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). If a plaintiff is proceeding *pro se*, "[t]he district court does not have a duty to search the entire record to find evidence supporting the non-movant's opposition." *Watkins v. Experian Info. Sols., Inc.*, No. 13-239, 2014 WL 12879669, at *4 (W.D. Tex. Sept. 8, 2014), *report and recommendation adopted*, 2014 WL 12879668 (W.D. Tex. Oct. 3, 2014) (citing *Jones v. Sheehan, Young, & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996)). "Rather, the non-movant must 'identify specific evidence in the record, and [] articulate the "precise manner" in which that evidence support[s] [her] claim.'" *Id.* (quoting *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)). "Where, as here, the nonmovant has not filed a summary judgment response or submitted any controverting evidence, the court may accept as true the undisputed facts adduced by the movant." *Cervantes v. Bank of America, N.A.*, No. 12-1012, 2012 WL 12873203, at *1 (N.D. Tex. Aug. 30, 2012).

    **C.**    **Analysis**

In her Amended Complaint, Plaintiff brings claims against IQ Data for violation of provisions of both the Fair Debt Collection Practices Act and the Fair Credit Reporting Act .[20] The Court addresses each set of claims, in turn, below.

    **1.**    **Fair Debt Collection Practices Act**

In her Amended Complaint, Plaintiff alleges that IQ Data violated the Fair Debt Collection Practices Act, specifically 15 U.S.C. §§ 1692e, 1692f, and 1692g, by making false or misleading representations and engaging in unfair practices, all related to the debt she purportedly owes Tiger Manor, as well as failing to properly verify said debt.[21] IQ Data argues that it is entitled to

---

[20] R. Doc. 49 at 5-8 ¶¶ 20-22, 26-36.
[21] R. Doc. 49 at 5-8 ¶¶ 20-22, 26-27, 32-33.

7

summary judgment on these claims because Plaintiff cannot establish that the debt at issue is a "debt" under the FDCPA and because IQ Data properly verified the debt at issue.[22]

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Debt collectors who fail to comply with the FDCPA are subject to civil liability. 15 U.S.C. § 1692k. In order to prevail in a civil action brought under the FDCPA, the plaintiff must prove that: "(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Sibley v. Firstcollect, Inc.*, 913 F. Supp. 469, 471 (M.D. La. 1995).

IQ Data initially argues that the debt being challenged by Plaintiff is not a "debt" as defined under the FDCPA. The FDCPA defines the term "debt" to mean:

> any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

15 U.S.C. § 1692a(5). Thus, because the FDCPA "[was] enacted to protect personal borrowers from abusive debt collection practices," to state a claim under the FDCPA, "a plaintiff, who has the burden of proof on each element of the cause of action, must demonstrate that the debt in question arises out of a transaction incurred for personal, family, or household purposes." *Burton v. Kohn Law Firm, S.C.*, 934 F.3d 572, 579 (7th Cir. 2019). Expenses incurred for a business purpose, by contrast, are outside the scope of the statute. *Id.* at 580 (citing *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000)); *see Garcia*,

---

[22] R. Doc. 235-1 at 7-12.

8

2009 WL 3079962, at *5 ("the FDCPA has no application to the collection of business or commercial debts").

As argued by IQ Data, "expenses incurred for a business purpose – including rents – are outside the scope of the FDCPA."[23] Per IQ Data, "to the extent that Plaintiff was running an online tutoring business from her apartment, those unpaid rents are not 'debts.'"[24] In support of this assertion, IQ Data asserts that Plaintiff "operated an online tutoring business" during the relevant period, citing to Plaintiff's deposition testimony in which she testifies to same.[25] Thus, per IQ Data, Plaintiff has failed to establish an essential element of her claim under the FDCPA, *i.e.*, that the debt in question is a *consumer* debt.

As this issue is one for which Plaintiff will bear the burden of proof at trial,[26] by IQ Data's either submitting affirmative evidence that negates an essential element of Plaintiff's claim or demonstrating there is no record evidence establishing such an essential element, the burden shifts to Plaintiff to provide evidence showing the existence of a genuine issue for trial. *See Griffin v. Robichaux*, No. 19-289, 2019 WL 6879758, at *2 (E.D. La. Dec. 17, 2019). "The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue exists for trial." *Garcia*, 2009 WL 3079962, at *2 (citing *Celotex*, 477 U.S. at 325). "Summary judgment should be granted if the nonmoving party fails to respond in [this] way[]…" *Griffin*, 2019 WL 6879758, at *2. Plaintiff here has wholly failed to respond in this way, presenting no evidence that the debt at issue here is a consumer debt or otherwise addressing IQ Data's argument in any way.

---

[23] R. Doc. 235-1 at 8.
[24] *Id.* at 9.
[25] *Id.*; R. Doc. 235-2 at 2 ¶ 8; R. Doc. 235-3 at 36 (136:11-137:24).
[26] As stated above, "[i]n order to prevail on an FDCPA claim, the plaintiff must prove the following: (1) the plaintiff has been the object of collection activity arising from consumer debt; (2) the defendant is a debt collector as defined by the FDCPA; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Garcia*, 2009 WL 3079962, at *3 (citations omitted).

9

Given Plaintiff's failure to carry her burden of proof of an essential element to a claim under the FDCPA, the Court finds IQ Data entitled to summary judgment here.[27] *See Burton*, 934 F.3d at 581, 584-85 (affirming grant of summary judgment where plaintiff "failed to put forward sufficient evidence to create a triable issue of material fact that the debt incurred on the Citibank account was consumer debt"); *Garcia*, 2009 WL 3079962, at *4-5 (granting summary judgment, noting "[b]ecause the burden is on Garcia to prove that he has been the object of collection activity arising from *consumer* debt for the FDCPA to apply … and because Garcia fails to make a showing sufficient to establish the existence of an element essential to his case, the undersigned believes that summary judgment should be granted on all of Garcia's claims"); *see also Browne v. Portfolio Recovery Assocs., Inc.*, No. 11-2869, 2013 WL 871966, at *4 (S.D. Tex. Mar. 7, 2013) (noting that "without at least some evidence that this particular alleged debt meets the statutory definition, plaintiff cannot establish a genuine dispute of material fact as to his consumer status").[28]

### 2.     Fair Credit Reporting Act

Plaintiff's next set of claims against IQ Data are for various alleged violations of the FCRA, specifically 15 U.S.C. § 1681s-2.[29] Although the FRCA primarily regulates the actions of consumer reporting agencies, Section 1681s-2 imposes responsibilities on furnishers of information to consumer reporting agencies. 15 U.S.C. § 1681s-2; *Shaunfield v. Experian Info.*

---

[27] The Court notes that IQ Data also claims that "[t]o the extent that the sums of money sought by IQ Data stemmed from Plaintiff's damage to property or her conversion of SC Tiger's gate card and door key, those are not 'debts' under the FDCPA" because "[c]ourts have consistently determined that liabilities arising from tort and theft do[] not constitute a 'debt' under the FDCPA." R. Doc. 235-1 at 8. And once again, Plaintiff does not respond to these allegations. However, as the Court has found IQ Data entitled to summary judgment on Plaintiff's FDCPA claims based on her failure to establish an essential element of her case, *i.e.*, that the debt here at issue is a consumer debt, the Court need not further address this argument by IQ Data.

[28] In its Motion for Summary Judgment, IQ Data additionally argues that it properly verified the debt at issue, meaning it cannot be held liable for violation of section 1692g, which governs verification of debts under the FDCPA. However, as the Court finds IQ Data entitled to summary judgment on Plaintiff's FDCPA claims based on Plaintiff's failure to prove the debt here at issue is a consumer debt, the Court also need not address the additional argument by IQ Data.

[29] R. Doc. 49 at 7-8 ¶¶ 28-31, 34-36.

*Sols., Inc.*, 991 F. Supp. 2d 786, 794 (N.D. Tex. 2014). "If a CRA notifies a furnisher of credit information (a 'furnisher') that a consumer disputes the reported information, the furnisher must 'review all relevant information provided by the [CRA],' 'conduct an investigation,' 'report the results of the investigation,' and 'modify ... delete ... or ... permanently block the reporting of [inaccurate or incomplete] information.'" *Jett v. Am. Home Mortg. Servicing, Inc.*, 614 F. App'x 711, 713 (5th Cir. 2015) (quoting 15 U.S.C. § 1681s–2(b)(1)(A)-(E)).

While the FCRA does not define "furnisher," the courts within the Fifth Circuit have defined this term broadly to include "an entity that transmits information concerning a particular debt owed by a consumer to a consumer reporting agency." *Shaunfield*, 991 F.Supp.2d at 794 n.7 (citing *Alam v. Sky Recovery Services, Ltd.,* No. 08–2377, 2009 WL 693170 at *4 (S.D. Tex. Mar. 13, 2009) (quoting *Thomasson v. Bank One,* 137 F.Supp.2d 721, 722 (E.D.La.2001)). Here, IQ Data admits that, as a furnisher of information, it is subject to these provisions of the FCRA.[30] However, IQ Data argues that it is entitled to summary judgment on Plaintiff's FCRA claims because Plaintiff has failed to show she suffered actual damages as a result of debt being reported by IQ Data, that there were no factual inaccuracies in IQ Data's credit reporting, and that IQ Data performed a reasonable investigation.[31]

### a. Whether Plaintiff Failed to Show She Suffered Actual Damages

In its Motion, IQ Data argues that "[b]ecause Plaintiff has not suffered any damages," given her lack of evidence thereof, Plaintiff's claims against IQ Data under the FCRA must fail.[32] The

---

[30] R. Doc. 235-1 at 13-14.
[31] *Id.* at 12-15.
[32] R. Doc. 235-1 at 13. The Court notes that IQ Data argues that the "law of the case doctrine" also applies here to demonstrate that Plaintiff has failed to show she suffered actual damages as a result of IQ Data's reporting of Plaintiff's debt. "Under the 'law of the case' doctrine, 'a decision on an issue of law made at one stage of a case becomes a binding precedent to be followed in successive stages of the same litigation.'" *F.D.I.C. v. McFarland*, 243 F.3d 876, 884 (5th Cir. 2001) (quoting *Roboserve, Inc. v. Kato Kagaku Co.*, 121 F.3d 1027, 1031 (7th Cir. 1997)). Stated another way, the law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue

11

FCRA imposes civil liability on any person or entity who willfully, § 1681n, or negligently, § 1681o, fails to comply with any FCRA requirement. *McDonald v. Equifax Inc.*, No. 15-3212, 2017 WL 879224, at *4 (N.D. Tex. Mar. 6, 2017) (citing *Ausherman v. Bank of Am. Corp.*, 352 F.3d 896, 899-90 (4th Cir. 2003)). The FCRA allows a plaintiff injured by a negligent reporting violation to prove and recover any actual damages suffered. *Smith v. Santander Consumer USA, Inc.*, 703 F.3d 316, 317 (5th Cir. 2012) (citing 15 U.S.C. § 1681o); *see also McDonald*, 2017 WL 879224, at *4 ("damages are an essential element to proving a negligent violation of the FCRA"). It also allows for recovery of actual, statutory, and punitive damages and attorney's fees. *Jett*, 614 F. App'x at 713 (citing 15 U.S.C. § 1681n(a)).

In her Amended Complaint, Plaintiff alleges "willful and negligent noncompliance with the law" by IQ Data, in violation of 15 U.S.C. §§ 1681n and 1681o.[33] She also alludes to several alleged damages, primarily a decreased credit score and resulting denial of credit.[34] However, Plaintiff has not only failed to provide evidence of any such alleged harm but also has failed to provide any evidence demonstrating how any such alleged harm was caused by IQ Data's reporting

---

to govern the same issues in subsequent stages in the same case." *Hines v. Cooper Tire & Rubber Co.*, No. 11-254, 2012 WL 4959614, at *1 (M.D. La. Oct. 17, 2012) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)); *see also Randolph v. St. Helena Parish Sch. Bd.*, No. 05-1024, 2007 WL 9702594, at *1 (M.D. La. Mar. 29, 2007) (same). As explained by the Fifth Circuit, "[t]he law of the case doctrine, as formulated in this circuit, generally precludes reexamination of issues of law or fact decided on appeal," but "applies only to those issues that were actually decided, rather than all questions in the case that might have been decided but were not." *Tratee v. BP N. Am. Piplelines, Inc.*, 390 F. App'x 386, 389 (5th Cir. 2010) (quoting *Alpha/Omega Ins. Svcs. v. Prudential Ins. Co. of Am.*, 272 F.3d 276, 279 (5th Cir. 2001)). IQ Data argues that this Court, in determining that prior Defendants Experian and Equifax were entitled to summary judgment in this case, "found that Plaintiff has provided no evidence that she suffered any decreased credit score or resulting denial of credit stemming from IQ Data's credit reporting." R. Doc. 235-1 at 13. IQ Data then reasons that "[b]ecause Plaintiff has not suffered any damages, her FCRA claims against IQ Data must similarly fail." *Id.* The Court disagrees. In its prior Ruling, the Court found that Plaintiff, in her Amended Complaint and in her Opposition to the Motions for Summary Judgment filed by Experian and Equifax, had failed to provide evidence of actual damages suffered as a result of the actions by those two former Parties. *See* R. Doc. 228 at 20-21; R. Doc. 232. Such ruling is not a rule of law decision and certainly is not binding here, where Plaintiff could easily have provided any evidence she wanted to prove damages in response to IQ Data's Motion. The fact that she did not does not in and of itself make the law of the case doctrine applicable here. Because the law of the case doctrine is not applicable here, this argument by IQ Data fails.

[33] R. Doc. 49 at 12 ¶ 2.
[34] *Id.* at 4 ¶ 13.

of Plaintiff's debt. *See Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 664 (7th Cir. 2001) ("Without a causal relation between the violation of the [FCRA] and the loss of credit, or some other harm, a plaintiff cannot obtain an award of 'actual damages[.]'"); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992) ("Mere conclusory allegations are not competent summary judgment evidence, and they are therefore insufficient to defeat or support a motion for summary judgment," and "non-movants [may not] rest upon mere allegations made in their pleadings without setting forth specific facts establishing a genuine issue worthy of trial"). In addition, as stated above, Plaintiff's Opposition to IQ Data's Motion for Summary Judgment does not respond substantively to this, or any other, argument by IQ Data. Plaintiff has therefore failed to prove she suffered any actual damages as a result of any action by IQ Data. Similarly, evidence of statutory and/or punitive damages would require evidence of a willful violation of the FCRA by IQ Data. And Plaintiff has provided none.

This Court has "repeatedly admonished" that "summary judgment is about *evidence*, and a party that fails to direct the Court's attention to any evidence supporting [her] claims cannot carry [her] burden of showing a genuine, material dispute (or lack thereof)." *Mitchell v. Diamond Plastics Corp.*, No. 18-919, 2021 WL 1234520, at *1 (M.D. La. Mar. 31, 2021) (emphasis in original, internal quotations and citations omitted); *see also Gerkin v. McMurdo*, No. 19-249, 2021 WL 664840, at *1 (M.D. La. Feb. 19, 2021) (same); *Combs v. Exxon Mobil Corp.*, No. 18-459, 2020 WL 5121362, at *6 (M.D. La. Aug. 31, 2020) ("Summary judgment is about evidence. Having failed to direct the Court to any evidence supporting her claims, Plaintiff cannot carry her burden of showing a genuine, material dispute."). Plaintiff's complete failure to respond to or provide any evidence to dispute IQ Data's arguments renders her incapable of carrying her burden of proof, meaning IQ Data is entitled to summary judgment on this issue. *See Wagner v. BellSouth*

*Telecomms., Inc.*, 520 F. App'x 295, 298 (5th Cir. 2013) (finding plaintiff's FCRA claim against CRA failed because plaintiff made no allegations and provided no evidence of damages suffered from a credit line reduction, meaning no viable economic damages claim, as well as provided no evidence of emotional damages "beyond her own conclusory assertions about emotional distress, which are insufficient to support an emotional damages award"); *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1160 (11th Cir. 1991) (granting summary judgment for CRA, in part, because plaintiff "has utterly failed to produce any evidence tending to show that he was damaged as a result of an allegedly inaccurate … credit report.").

While this alone would be sufficient for dismissal of Plaintiff's FCRA claims against IQ Data, the Court, now turns to Plaintiff's subsequent FCRA argument.

### b. Whether IQ Data Performed a Reasonable Investigation

As argued by IQ Data in its Motion for Summary Judgment, because there were no factual inaccuracies in its credit reporting and because it performed a reasonable investigation, it is entitled to summary judgment on Plaintiff's FCRA claims.[35] Per IQ Data, "[t]he record is clear that, upon receipt of notices from the CRA, IQ Data investigated the disputes and provided a timely verification that the entry on Plaintiff's credit report was accurate."[36]

As there is no private right of action under 15 U.S.C. § 1681s-2(a), the Court turns to § 1681s-2(b), which grants consumers a private right of action and "imposes duties on furnishers of information to investigate disputed information and to report the results of an investigation to the consumer reporting agency." *Schweitzer v. Melane*, No. 21-154, 2022 WL 135423, at *4 (M.D.

---

[35] R. Doc. 235-1 at 13. The Court notes that, once again, IQ Data argues that the law of the case doctrine applies here to their argument that Plaintiff failed to demonstrate a factual inaccuracy in her credit report. *Id.* at 15. However, for the reasons stated above, the Court again finds the law of the case doctrine inapplicable here, where Plaintiff could easily have provided evidence to indicate IQ Data's investigation was unreasonable in response to IQ Data's Motion for Summary Judgment. Again, the fact that she did not does not in and of itself make the law of the case doctrine applicable here.

[36] *Id.* at 15.

La. Jan. 13, 2022). "Section 1681s-2(b) explains a furnisher's responsibilities after a credit reporting agency has notified the furnisher of a consumer dispute regarding information provided by the furnisher. Upon receiving notice of a dispute, the furnisher is to conduct an investigation and report the results to the appropriate consumer reporting agencies." *Kaufman v. Amcol Sys., Inc.*, No. 16-693, 2018 WL 4558188, at *3 (M.D. La. Sept. 21, 2018) (quoting *Desselle v. Ford Motor Credit Co. LLC*, No. 14-1147, 2014 WL 4635545, at *3 (E.D. La. Sept. 15, 2014)). "To recover under section 1681s-2(b), a Plaintiff must demonstrate that (1) she notified a consumer reporting agency of inaccurate information; (2) the consumer reporting agency notified the Defendant of the dispute; and (3) the Defendant failed to conduct an investigation, correct any inaccuracies and failed to notify the consumer reporting agency of the results of the investigation." *Id.* (quoting *Bacharach v. Sun Trust Mortg., Inc.*, No. 14-962, 2015 WL 1897653, at *3 (E.D. La. Apr. 27, 2015)).

Before these factors can be considered, though, often "an initial showing of factual inaccuracy in the information provided by a furnisher to a CRA [i]s a prerequisite to recovery." *Spencer v. Specialized Loan Servicing, LLC*, No. 19-1536, 2021 WL 4552548, at *7 (N.D. Tex. Sept. 1, 2021).[37] In addition, the investigation conducted by the furnisher must be "reasonable." *Id.*, at *8. "Whether an investigation is unreasonable is a question of fact, and the burden of

---

[37] As explained in the *Spencer* case, the Fifth Circuit has not squarely addressed whether proof of factual inaccuracy is a predicate to recovery under § 1681s-2(b). *Spencer v. Specialized Loan Servicing, LLC*, 2021 WL 4552548, at *6. It has, however, affirmed district court rulings that required consumers to demonstrate actual inaccuracies in the furnished information as a prerequisite to recovery. *Id.* (citing *Hall v. LVNV Funding, L.L.C.*, 738 F. App'x 335, 336 (5th Cir. 2018) (per curiam); *Ostiguy v. Equifax Info. Servs., L.L.C.*, 738 F. App'x 281, 282 (5th Cir. 2018), *aff'g* No. 16-790, 2017 WL 1842947, at *5 (W.D. Tex. May 4, 2017)). In addition, the *Spencer* case notes that this also appears to be the prevailing view among district courts in this Circuit. *Id.* (citing *Palmer v. ProCollect, Inc.*, No.19-82, 2020 WL 4677570, at *3 (E.D. Tex. May 5, 2020); *Schoch v. Wells Fargo Home Mortg.*, No. 16-619, 2017 WL 2385626, at *4 (E.D. Tex. Apr. 11, 2017), *adopted by* 2017 WL 2312079 (E.D. Tex. May 26, 2017); *Block v. Real Time Resolutions., Inc.*, No. 20-1592, 2021 WL 2559260, at *8 (W.D. La. June 8, 2021), *adopted by* 2021 WL 2554919 (W.D. La. June 22, 2021); *Fleming v. Ginny's, Inc.*, No. 3:20-284, 2020 WL 6828752, at *2 (S.D. Miss. Nov. 20, 2020)).

15

showing unreasonableness is on the plaintiff." *Id.* (citation omitted). However, courts can determine as a matter of law that an investigation by a furnisher of information was reasonable under the circumstances. *See Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005) (holding that a furnisher of information's investigation was reasonable as a matter of law where the furnisher of information, upon receipt of a CDV from a credit reporting agency, verified plaintiff's name, address, and date of birth and sent the CDV back to the credit reporting agency; "requiring a furnisher to automatically contact every consumer who disputes a debt would be terribly inefficient and such action is not mandated by the FCRA").

As alleged by IQ Data, in response to an ACDV sent by Equifax, "IQ Data verified that the IQ Data Account was accurate and properly reporting on Ms. McCoy's credit file."[38] In support, IQ Data, in its Statement of Undisputed Facts, cites to the declaration of Nadia Reynaga-Moreno, Legal Support Supervisor for Equifax, in which she testified that IQ Data responded to Equifax's ACDV and verified that the debt in question was properly reporting on Plaintiff's credit file.[39] Moreover, the ACDV sent by Equifax reflects the IQ Data responder's name, contact information, and date of response; notes that the account was "verified as reported"; and states: "Account previously in dispute – now resolved by data furnisher."[40]

With regard to Plaintiff's dispute to Experian, IQ Data, in its Statement of Undisputed Facts, asserts that Experian, in response to said dispute, sent an ACDV to IQ Data, to which IQ Data timely responded.[41] IQ Data cites to the declaration of Anna Simmons, a Senior Legal and Compliance Specialist for Experian, in which she testifies that "IQ Data reviewed the document images of Ms. McCoy's dispute letter and attachments included with the ACDV" and "responded

---

[38] R. Doc. 235-2 at 4-5 ¶ 23.
[39] R. Doc. 177-3 at 9 ¶ 36.
[40] *Id.* at 45.
[41] R. Doc. 235-2 at 6 ¶¶ 28-29.

16

to Experian via ACDV … by verifying Ms. McCoy's identification and verifying the reporting of the IQ Data account."[42] In addition, the ACDV response sent by Experian states: "ID verified. Acct info verified."[43] Plaintiff, who carries the burden here, does not respond to IQ Data's claim of reasonableness or present any evidence showing that IQ Data's investigation was unreasonable. Thus, the uncontroverted evidence shows that IQ Data verified Plaintiff's account information. As IQ Data's Statement of Undisputed Facts has been adopted because it was unopposed, and because Plaintiff has failed to carry her burden of presenting specific evidence to dispute IQ Data's claims, the Court finds IQ Data entitled to summary judgment on Plaintiff's FCRA claims against it. *See Westra*, 409 F.3d at 827 (affirming grant of summary judgment to defendant on plaintiff's FCRA claim because defendant's investigation was reasonable); *Robinson v. EMC Mortg. Corp.*, No. 10-2140, 2013 WL 1245863, at *11 (N.D. Tex. Mar. 26, 2013) (granting summary judgment in favor of furnisher of information, finding, in part, that furnisher conducted a reasonable investigation under the FCRA).

### III. CONCLUSION AND RECOMMENDATION

Plaintiff has failed to respond to IQ Data's Statement of Undisputed Material Facts, has failed to substantively respond to any of the arguments raised by IQ Data in its Motion for Summary Judgment, has failed to identify any facts genuinely in dispute, and has failed to produce any evidence or identify any record evidence to dispute any of IQ Data's arguments. As such, the Court finds that IQ Data is entitled to summary judgment on all of Plaintiff's claims against it.

Accordingly,

---

[42] R. Doc. 178-3 at 7 ¶¶ 22-23.
[43] R. Doc. 178-5 at 2.

**IT IS RECOMMENDED** that the Motion for Summary Judgement filed by Defendant IQ Data International, Inc. (R. Doc. 235), be **GRANTED** and that all of Plaintiff Lydia McCoy's claims against IQ Data International, Inc., be **DISMISSED WITH PREJUDICE**.

Signed in Baton Rouge, Louisiana, on September 23, 2022.

*/s/ Scott D. Johnson*

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**